No. 39,507

J. H. Mai and Lena Mai, *Appellees,* v. The City of Garden City, Kansas, *Appellant.*

(277 P. 2d 636)

Opinion filed December 11, 1954.

*Daniel R. Hopkins,* of Garden City, argued the cause, and *Clark H. Mc- Pherson,* of Garden City, was with him on the briefs for the appellant.

*Clifford R. Hope, Jr.,* of Garden City, argued the cause, and *Clifford R. Hope, Lloyd H. Haag,* and *Dale E. Saffels,* all of Garden City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

WERTZ, J.:   Under proceedings in eminent domain, the City of Garden City appropriated for its use a portion of plaintiffs' land. Plantiffs, landowners, being dissatisfied with the award of the appraisers, appealed to the district court where the matter was tried. The jury returned a verdict in favor of plaintiffs, awarding them damages in the amount of $17,582.25, and returned its answers to special questions submitted by the court:

1. What was the market value on December 16, 1952, of the 10.4 acres of land taken by the City of Garden City, Kansas?   $3,640.

2. What was the market value on December 16, 1952, of that part of the plaintiffs' land remaining, not including the 10.4 acres taken, immediately before the taking of the 10.4 acres?   $44,975.

3. What was the market value on December 16, 1952, of that part of the plaintiffs' land remaining immediately after the taking by the City of the 10.4 acres?   $31,032.75.

From the judgment entered by the trial court on the award made by the jury, defendant appeals, urging that the trial court erred in its ruling on the admissibility of evidence, the overruling of its demurrer to the plaintiffs' evidence, and overruling its motion for a new trial.

The appellees J. H. Mai and Lena Mai will be referred to as plaintiffs, and the appellant The City of Garden City as the City, or defendant.   The facts may be briefly stated as follows:   The land taken for the drainage ditch amounted to 10.4 acres.   The right of way for the ditch was 100 feet wide, approximately 4,530 feet long through plaintiffs' land, and varied from six to nine feet deep.   The dirt from the ditch was piled on the right of way eight to twelve feet high on either side.   Plaintiffs' land was a quarter section from which a portion in the northeast corner had been previously sold for residential purposes, some at $1,000 an acre, leaving approximately 141 acres prior to the taking of the land for the ditch.   The land joined the city limits of Garden City, except for the intervening U. S. highway 50N. The ditch divided plaintiffs' land into two tracts.   Some 21 acres north of the ditch, which was best adapted to residential property, was dry farm land sloping to the south, and the land south of the ditch, approximately 107 acres, a portion of which was best adapted to commercial property, also included 78 acres of irrigated ground.   The land taken for the ditch was principally irrigated.   The ditch cut off

plaintiffs' only supply of irrigation water which they had been receiving from the Garden City Ditch Company.

Plaintiffs contended the most advantageous use of the land taken was for commercial and residential purposes, and a portion for irrigated farm land, while the City contended its most advantageous use was for both dry and irrigated farming. To sustain their contention, plaintiffs called a Mr. Atherton who testified he had been a real estate broker for several years; that he listed and sold both irrigated and dry farm lands and city and commercial property; that he was familiar with the layout of the quarter section of land which cornered with the city limits; that he viewed the premises along with Mr. Milford and Mr. Stone; that certain portions of the land would be best adapted to residential purposes, a portion commercial and a portion irrigated farm purposes, and that he was familiar with market values of such property. He testified the value of the 10.4 acres taken was $5,200; that the value of the 141 acre tract before the ditch was taken was $70,500, and that the value of the entire tract afterwards was $44,000. The witness testified in response to a question: Q. "We want the damage to the land not taken, the difference between before and after, total damage to all the land not taken?" A. "$26,700."

The defendant admitted that witness Atherton was competent to give expert testimony, but contended that he failed to testify as to the value on the day of the taking of the land. There is no merit to this contention. As above related and as disclosed in other places in the record, he testified regarding the value immediately before and immediately after the taking.

A Mr. Milford testified he was familiar with plaintiffs' land and that he owned farm land and city property in the vicinity and in other counties of the State; that he had bought and sold real estate during the last few years on a large scale; that part of his business was to buy real estate for profit and investment; that he was familiar with the farm and surrounding property; that he investigated and watched the sales of real estate for purposes other than farming, and that he was familiar with the market value of plaintiffs' property for farming, residential and commercial purposes. He testified the total market value of plaintiffs' land prior to taking a portion thereof for the ditch, was $70,500, and immediately after the taking, it was valued at $44,000, and the damage resulting from the construction of the ditch through plaintiffs' property was $26,500. He further

testified there was no change in the value of the property between the day of the taking and the day of his appraisal.

Mr. Stone testified he owned land in the community and his principal occupation was farming; that he had been a building contractor prior to 1945 and, as such, was familiar with real estate in the vicinity of plaintiffs' land; that he had lived in Garden City since 1929 and on a farm adjacent thereto since 1945, and was familiar with real estate values in the area; that he made an appraisal of plaintiffs' land along with Mr. Atherton and Mr. Milford, and that his opinion regarding the value of the land before and after the taking was approximately the same as shown by the testimony of Mr. Atherton and Mr. Milford.

Defendant called several witnesses who testified as to the market value of the plaintiffs' land for farming purposes only, and did not consider the value of any of plaintiffs' property for residential or commercial purposes. Even though one of defendant's witnesses on cross examination admitted that he knew several blocks of plaintiffs' land had been sold in tracts between the years 1948 and 1952 at $1,000 an acre for residential purposes, he did not consider this in arriving at the damages to plaintiffs' land.

Defendant argued that the court erred in permitting witnesses Milford and Stone to testify as to the value of plaintiffs' land for residential and commercial purposes, that their testimony was speculative, and the damage to plaintiffs' property should have been based upon its value for farming purposes only.

It is the general rule of law that full compensation to the owner of land taken under the right of eminent domain includes not only the value of the property actually taken but also includes the diminution in value of that remaining, and is to be based upon the best and most advantageous use to which the property may be put. The land owner is entitled to show the market value of his land for every purpose to which it was adapted. The fact that it has been used for one purpose only does not prevent him from showing its availability for other appropriate uses and its value for such uses. (*McIntyre v. Board of County Comm'rs of Doniphan County*, 168 Kan. 115, 211 P. 2d 59; *Steifer v. City of Kansas City*, 175 Kan. 794, 799, 800, 267 P. 2d 474.)

Another well-established general rule of law is that the value of a parcel of land taken by eminent domain is always a matter of opinion, and may be proved by opinion evidence. Experts,

such as dealers in real estate, who have a general knowledge of the subject of real estate values and are familiar with prices in the neighborhood may give their opinion as to value of land. Opinion evidence is also usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values. The competency of such witnesses is primarily for the court, and the weight to be given such testimony is for the jury. (18 Am. Jur. 999, § 355.)

We held in *Railway Co. v. Weidenmann,* 77 Kan. 300, 94 Pac. 146, that in a proceeding to condemn a right of way for a railroad through a farm a farmer who has lived many years in the neighborhood and knows the character of the land and the course of the railroad through it, as well as the condition in which it was left by the construction of the railroad, and who states that he is acquainted with its market value in that neighborhood, is competent to express an opinion of its market value, although he does not know of any actual sales in the neighborhood at the time the land was appropriated.

In *Burger v. City of Wichita,* 132 Kan. 105, 294 Pac 670, we stated that persons living in the vicinity of vacant city property may testify concerning its value, although they were not engaged in the real estate business, and have not bought nor sold lots in that vicinity. For cases of like holding, see 2 Hatcher's Kansas Digest [Rev. Ed.], Evidence, § 232.

Plaintiffs' witnesses consisted of a qualified real estate man, a farmer living in the neighborhood, and a general building contractor who was also engaged in farming, all of whom were acquainted with the market value of plaintiffs' land, its advantages and disadvantages, its close proximity to the City, the best use to which the land could be put for residential, commercial and farming and, under strict cross examination, testified to the elements going to make up the damages and, in all, were well qualified to state their opinions in regard to the market value of plaintiffs' land before and after taking the land for the ditch. (*K. C. & S. W. Rld. Co. v. Ehret,* 41 Kan. 22, 20 Pac. 538; *L. & W. Rly. Co. v. Hawk,* 39 Kan. 638, 18 Pac. 943; *C. K. & W. Rld. Co. v. Cosper,* 42 Kan. 561, 22 Pac. 634.)

Defendant urges the trial court erred in refusing to permit the jury to view the premises. No such request was made by either party until after the final argument of the case, at which time the court denied the request on the ground of changed conditions due

to a snowstorm on the previous night. Whether a jury should be permitted to view the premises in a condemnation action of this character is within the discretion of the trial court, and unless there is plain abuse of that discretion, error cannot be predicated thereon. No such abuse has been shown. (*Fitch v. State Highway Comm.*, 137 Kan. 584, 21 P. 2d 318; *Harris v. Wyandotte County Comm'rs*, 151 Kan. 946, 949, 101 P. 2d 898.)

Defendant complains of the court's refusal to permit one of its witnesses to testify as to the availability of irrigation water to the plaintiffs from other sources. The record does not reflect what the testimony of the witness actually would have been had he testified. All that it discloses is merely what defendant's counsel claimed the testimony of the witness would be. The witness might or might not have so testified. It has often been held that such a proffer is insufficient to be reviewable. (*Rusch v. Phillips Petroleum Co.*, 163 Kan. 11, 21, 180 P. 2d 270, and cases of like holding; 2 West's Kansas Digest, Appeal and Error, § 692.) Moreover, the evidence was not offered on defendant's motion for new trial, and there is nothing here for review.

Defendant further complains of the court's refusal to submit one of its requested special questions to the jury. It is proper for the court to supervise and shape special interrogatories that are submitted to a jury, and the court may reject questions that are improper or immaterial, and limit the questions to ultimate facts or controverted issues. (*Finke v. Lemle*, 173 Kan. 792, 797, 252 P. 2d 869, and cases therein cited.) A review of the record discloses that the questions submitted by the court sufficiently covered the ultimate questions of fact in the case, and the defendant was not prejudiced by the court's refusal to submit to the jury its requested interrogatory No. 3.

Defendant's contention that a new trial should have been granted because the verdict of the jury was based on speculative testimony as to value, and that the court's instructions with respect thereto were insufficient, is without merit. The court was careful in its instructions to guard against any possibility of that. Defendant does not question the rule of law embodied in the court's instructions, but contends only that they did not include a full and fair statement of the law. A review of the instructions given by the trial court discloses that they are exceptionally well drafted and cover all the issues of law involved in the case.

We find nothing in the record to sustain defendant's contention that the verdict was excessive, or rendered as a result of passion and prejudice. There was an abundance of evidence to sustain the answers to the special interrogatories and the verdict. The trial judge who heard the testimony in the case approved the verdict as rendered by the jury and entered judgment thereon, and it will not be disturbed here.

Plaintiffs suggest the evidence justifies a verdict in a greater amount than that awarded. They filed no motion for a new trial. Neither the trial court nor this court on appellate review has the power to increase a verdict of the jury.

Defendant next argues that the remarks of plaintiff's council to the jury during the final argument were prejudicial. The record does not contain that argument to the jury. Moreover, the abstract does not disclose any objection was made to counsel's alleged comments, and no request was made that the jury be instructed in regard to it. It is a well-established rule that misconduct of counsel in argument to the jury is not available as a ground for reversal where no objection is made to it and no request is made for a ruling thereon, or for an instruction to the jury concerning it. (*State v. Bonomo,* 173 Kan. 675, 678, 250 P. 2d 833; *State v. Fadler,* 126 Kan. 664, 271 Pac. 283.)

In view of what has been said, the judgment of the trial court is affirmed.

It is so ordered.