No. 39,613

STATE OF KANSAS, *Appellee*, v. BOICOURT HUNTING ASSOCIATION, a Corporation, *Appellant*.

(282 P. 2d 395)

Opinion filed April 9, 1955.

*Douglas Hudson*, of Fort Scott, argued the cause, and *Howard Hudson* and *Douglas G. Hudson*, both of Fort Scott, and *Robert Wagstaff*, of Kansas City, Missouri, were with him on the briefs for the appellant.

*Paul Wilson*, assistant attorney general, argued the cause, and *Harold R. Fatzer*, attorney general; *Robert E. Hoffman*, assistant attorney general, *Noel Mullendore*, assistant attorney general, *John H. Morse*, assistant attorney general, and *Harry C. Blaker*, assistant attorney general, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from rulings made in a condemnation proceeding in which an answer and cross-petition seeking injunctive relief, were stricken from the files and a temporary restraining order theretofore issued was set aside and dissolved.

On April 5, 1954, pursuant to G. S. 1949, 32-213, and in full and complete compliance with G. S. 1949, 26-201, a petition, signed by Harold R. Fatzer, Attorney General of the State, titled

"IN THE MATTER OF THE PETITION OF THE STATE OF KANSAS FOR THE APPOINTMENT OF COMMISSIONERS TO APPRAISE AND ASSESS DAMAGES BY REASON OF THE CONDEMNATION OF CERTAIN LANDS, HEREINAFTER DESCRIBED, FOR PUBLIC USE."

and addressed

"To the Honorable Harry W. Fisher, Judge of the District Court of the County of Linn, State of Kansas.",

was presented to such judge asking for the condemnation and appropriation of tracts of lands belonging to numerous landowners, including Boicourt Hunting Association, a Corporation, hereinafter referred to as the Association.

The petition is lengthy and, by reason of the issues presented on appeal, does not require extended reference. In a general way it may be stated it contains allegations disclosing that the Forestry, Fish and Game Commission of the State has the power and authority to condemn and in the due and reasonable exercise of its judgment has determined and ordered that it is necessary to take, appropriate and acquire the lands described in the petition, including those belonging to the Association, for public use and the use of the State of Kansas as a state game refuge, public forestry, recreational grounds and park; numerous other recitals disclosing

the commissioners' right, power and authority to maintain and conclude the condemnation proceeding initiated by its presentation in the manner aforesaid; and then prays for the appointment of three commissioners to view and make an appraisement of the value of the tracts of land therein described, including all rights appertaining thereto, and an assessment of the damages for taking appropriation and condemnation thereof.

For some reason, not disclosed by the record but respecting which there is no controversy or dispute on appeal, the foregoing petition was presented to and considered by the Honorable M. K. Hoag, Judge Pro Tem of the District Court of Linn County, on April 6, 1954, who entered an order appointing three commissioners to view and appraise the tracts of real estate sought to be condemned and directing such commissioners to make a full and complete report of their appraisement of such lands and assessment of damages, in writing under oath, to the court without unnecessary delay.

Some fourteen days later, on April 20, 1954, while the commissioners appointed, as aforesaid, were proceeding to view and appraise the lands sought to be condemned, but before any appraisal report with respect thereto had been filed by them, the Association made its appearance in the condemnation proceeding and filed a verified answer and cross-petition in the office of the clerk of the District Court of Linn County, asking for equitable relief. The answer controverts all material allegations of the petition and, in particular, denies its allegations that the condemnation proceeding sought to be instituted by its presentation is authorized by the laws of the State of Kansas or that its purpose is to acquire land to devote to a public use. The cross-petition asserts the Association is the owner of certain tracts of land sought to be condemned; states the purpose of institution of the contemplated condemnation on the part of the Forestry, Fish and Game Commission is to acquire land for the establishment of public hunting and shooting grounds upon which bird life and other forms of wildlife and game may be hunted and destroyed; denies the laws of Kansas authorize the taking of private property through condemnation by the Commission for such purpose; denies the establishing and maintaining of a public hunting and shooting ground is a public purpose in furtherance of which the power of eminent domain may be constitutionally exercised; challenges the validity, under the Consti-

tutions of the United States and the State of Kansas, of the condemnation of the Association's property for a purpose which is not a public purpose; avers the commissioners are proceeding to view and appraise the Association's land and that upon the filing of the appraisal report, which is imminent, it will be wrongfully and unlawfully deprived of its right and title to real property; charges that the Association has no adequate remedy at law; and finally prays for an injunction forever restraining the alleged unlawful and unconstitutional condemnation and a temporary injunction restraining any further proceeding which would deprive the Association of title to its real property during the pendency of the condemnation proceeding and prior to a final resolution on the merits of the issues sought to be raised.

Following the filing of its answer and cross-petition the Association obtained a temporary restraining order from the probate judge of Linn County prohibiting any further action in the condemnation proceeding until its prayer for a temporary injunction could be heard. Thereafter the State, through its statutory representative, the Attorney General, and other attorneys on behalf of the condemners, filed a motion in the office of the Clerk of the District Court asking that the motion filed by the Association in the condemnation proceeding be stricken from the files, that the restraining order issued by the probate judge be set aside, and that all relief by injunction in such proceeding be denied, for reasons therein stated, which motion so far as here pertinent, reads:

"1. That the above court does not have jurisdiction to consider and adjudge the issues and matters raised by the Answer and Cross-Petition of the Boicourt Hunting Association, a corporation, for the following reasons:

"(a) That the Answer and Cross-Petition as filed herein by the Boicourt Hunting Association are in contravention of G. S. 1949, 60-3823, and therefore are prohibited from being filed in this proceeding.

"(b) That no action has been commenced or is pending in which relief by injunction or restraining order may be had.

"2. For the reason that the statements and allegations as stated and set forth in said Answer and Cross-Petition by the Boicourt Hunting Association are inadequate and insufficient to authorize or justify the relief sought."

In due time the foregoing motion was presented to the Honorable Harry W. Fisher, Judge of the District Court of Linn County, who took it under advisement and then, on June 24, 1954, executed an order and decree directing that the Association's answer and cross-petition should be stricken from the proceeding, that the temporary

restraining order, theretofore in effect, should be dissolved, and that all injunctive relief requested in such pleading be denied. On the same day the Association gave notice of its intention to appeal from the order appointing the commissioners to appraise its land in the condemnation proceeding, also the orders made on June 24, 1954, and now seeks review of such orders and rulings in this court.

From what has been related it becomes apparent that we are not here concerned with the merits of a condemnation proceeding or a separate action involving the rights of the parties thereunder but with appellate issues respecting the procedure to be followed in disposing of such a proceeding when properly instituted and conducted under the provisions of G. S. 1949, 26-201 and 202, the first of which sections, we pause to note, specifically provides that a proceeding to obtain the relief contemplated by its terms is commenced by the presentation of a written application to the Judge of the District Court of the county in which the land involved is situated, not to the district court itself.

That the issue presented for appellate review by the record is the one just stated is inferentially, if not expressly, conceded by appellant in its own brief where, although the merits of the proceeding are raised and strenuously argued, the following statement appears:

"In the last analysis, the only procedural question for this Court to determine is the propriety of challenging the validity of the condemnation and of the right to appropriate in the actual condemnation proceeding itself. . . ."

The position taken by appellant on the question just stated is that the validity of the condemnation and the right to appropriate its lands can be litigated and determined in the involved condemnation proceeding itself, while appellee contends that cannot be done under our statute and decisions.

Conceding we have never passed upon the all decisive question thus raised, as applied to G. S. 1949, 26-201 and 202, it can be stated that this court long ago determined such question contrary to the contentions now advanced by appellant regarding it under statutes so similar in character that the decisions rendered with respect thereto must be regarded as controlling precedents.

In *State Highway Commission v. Griffin*, 132 Kan. 153, 294 Pac. 872, like statutes (R. S. 1923, 26-101 and 26-102, now G. S. 1949, 26-101 and 26-102) were involved. There no appeal was taken from the award in a condemnation proceeding. In dealing directly with the nature of the proceeding we said:

". . . The condemnation proceeding was a special statutory proceeding, appraisement of the land was in the nature of an inquest, and the procedure in such cases is that prescribed by statute. Only in the event of timely appeal could an action be docketed, and no personal judgment for money can be rendered except in an action." (155.)

And with respect to remedies available to a landowner involved in such a proceeding stated:

"The revised statute does not now say that on appeal judgment may be rendered, but if that be the meaning there has been no appeal in the proceedings under review, and landowners' remedies for enforcement of the awards, or other protection of their interests, are common-law remedies. (*Railway Co. v. Murphy*, 75 Kan. 707, 714, 90 Pac. 290; *Railway Co. v. Wilson*, 66 Kan. 233, 237, 69 Pac. 342; *St. L., L. & D. Rld. Co. v. Wilder*, 17 Kan. 239, 247.)" (p. 155.)

*Todd v. Atchison, T. & S. F. Rly. Co.*, 134 Kan. 459, 7 P. 2d 79, deals with the condemnation of land for railroad purposes. There we held:

"The condemnation of land for railway uses is a statutory proceeding, not an ordinary action at law or a suit in equity, and is governed by the statute prescribing the methods of exercising the right of eminent domain." (Syl. ¶ 1.)

And in the opinion said:

". . . From the beginning it has been recognized that the proceeding is a special statutory one to be accomplished in a way prescribed in the condemnation act . . ." (p. 461.)

Later in *Glover v. State Highway Comm.*, 147 Kan. 279, 77 P. 2d 189, a condemnation proceeding instituted under G. S. 1935, 26-101 and 26-102 (now G. S. 1949, 26-101 and 26-102), statutes and questions similar to those involved in the case at bar were under consideration. In that case while discussing, from a procedural standpoint, the force and effect to be given such sections of the statute and one of the sections of our code of civil procedure, now G. S. 1949, 60-3823, we said:

"G. S. 1935, 60-3823, so far as here pertinent, reads:

"'Until the legislature shall otherwise provide, this code [of civil procedure] shall not affect proceedings to assess damages for private property taken for public uses, . . . but such proceedings may be prosecuted under the code whenever it is applicable.'

"So far as it applies here, this section simply means that *the code of civil procedure has no application to any special procedure provided by the legislature for the taking of private property for public use* unless and until an appeal is taken to the district court, unless the legislature specifically makes the civil code applicable prior to that time, which it has not done. G. S. 1935, 26-102, reads as follows:

" 'If the petitioner or the owner of any lot or parcel of ground so condemned shall be dissatisfied with the appraisement thereof, he shall, within thirty days, file a written notice of appeal with the clerk of said court and give bond for the costs thereof, to be approved by said clerk, and thereupon an action shall be docketed and tried the same as other actions.'

"This follows, of course, what has been done under the special proceedings for the taking of private property for public use, as outlined in G. S. 1935, 26-101, and the filing of the report of the commissioners, previously appointed, with the clerk of the district court, showing the award of damages made by them to the landowner. That prior proceeding is what the code of civil procedure does not apply to, as was stated in G. S. 1935, 60-3823. But when the notice of appeal and bond are given and approved, as authorized by G. S. 1935, 26-102, 'an action shall be docketed and tried the same as other actions.' . . ." (Emphasis supplied.)  (p. 282.)

And in the same opinion, after general historical reference to existing condemnation law, stated:

"The commission which drafted the statute (G. S. 1935, 26-101, 26-102), and the legislature which adopted it, had before them the previous statutes of the state and the previous decisions of this court respecting eminent domain and procedure therein. Certain principles respecting those matters had become settled in the law of this state, of which the following may be mentioned: (1) The power of eminent domain; that is, the right to take private property for a public use is inherent in a state; it is not one granted by our constitution. (*C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.,* 28 Kan. 453; *Jockheck v. Comm'rs Shawnee Co.,* 53 Kan. 780, 789, 37 Pac. 621; 20 C. J. 513; 10 R. C. L. 6; Lewis on Eminent Domain, § 1), but its exercise may be limited by the constitution (*Challiss v. A. T. & Santa Fe Rld. Co.,* 16 Kan. 117; 20 C. J. 516; 10 R. C. L. 11, 12). (2) Except as so limited, it may be exercised for any public purpose designated by the legislature, and in the manner it prescribes. (*Irrigation Co. v. Klein,* 63 Kan. 484, 485, 65 Pac. 684; *C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.,* supra; 20 C. J. 624; 10 R. C. L. 195.) (3) The taking of private property for public uses is not necessarily a judicial act; it may be done by or before a nonjudicial officer, board or tribunal. (See authorities above cited.) (4) That may be the district court, or any judge thereof, the probate court, or its judge, boards of county commissioners, or any other official board or tribunal authorized by the legislature to act in that capacity. (See Gen. Stat. 1915, §§ 1075, 1745, 1971, 1972, 2187 to 2207, 5733 to 5740, 9408 to 9413, and cases there annotated; 20 C. J. 1023 to 1028.) (5) The nature of the proceedings is not changed by reason of other duties, or of the class or classification of the official board or tribunal before whom, or by whom, the proceeding is conducted. The proceeding in all cases consists of a declaration or prima facie showing by the condemning party that it has the right of eminent domain and to take the private property in question for a specific public use, that it has found it necessary to do so, and a request for the appointment of commissioners to determine the amount the condemning party should pay for the property taken, and the amount of damages, if any, to the remaining property of the owner resulting from the taking, the determination of those matters by the commissioners, and their

644

report to the official board or tribunal designated by statute to receive such report. (6) The amount found by the commissioners proper to be paid by the condemning party was called an award. (See above authorities.) It was determined by the commissioners, not by the official board or tribunal which appointed them, or to whom they made their report. It was not a judgment; no execution could be issued on it. (7) While it was usual for statutes to make a provision for either party not satisfied with the award to appeal to the district court, such a provision was not essential to the validity of the proceedings or the award. (*C. B. U. P. Rld. Co. v. A. T. & S. F. Rld. Co.*, supra.) (8) There was no action in court until one of the parties took an appeal from the award. Prior to that time everything done was in the nature of an inquest (*State Highway Commission v. Griffin*, 132 Kan. 153, 155, 294 Pac. 872), and under the procedure specifically provided for the particular kind of condemnation.

"There is nothing in the statute (G. S. 1935, 26-101, 26-102), or in the report of the commission to revise the statutes, which indicates an intention to change the essential nature of these proceedings prior to the time one of the parties took an appeal to the district court." (pp. 285, 286.)

Based on the foregoing decisions to which we adhere, and the principles therein announced, we have no difficulty in concluding: (1) That a condemnation proceeding such as is here involved is a special statutory proceeding with procedure limited, under the provisions of G. S. 1949, 60-3823, to that prescribed and authorized by the terms of G. S. 1949, 26-201 and 26-202; (2) that the provisions of the two sections of the statute last mentioned neither contemplate nor comprehend judicial determination of the validity of the condemnation or the right to appropriate land sought to be condemned in a proceeding instituted under their terms; (3) that upon the commencement of such a proceeding there is no action pending in court, in which the rights of the parties with respect to any of the matters just mentioned can be adjudicated, until after the taking of an appeal, as authorized by G. S. 1949, 26-205, from the award made by the commissioners; (4) that until the taking of such appeal everything done in the proceeding is in the nature of an inquest; (5) that except for an appeal from the award the remedies available to a landowner involved in a condemnation proceeding are common-law remedies; (6) that following the institution of a condemnation proceeding under the provisions of 26-201 and 26-202, *supra*, and a prima facie showing resulting in the appointment of commissioners pursuant to their terms, no pleadings challenging the validity of the condemnation and the right to appropriate the lands involved are warranted or permitted in the proceeding and the judge of the district court, granting the initi-

ating application, has no power or authority to determine questions thus raised respecting such matters in such proceeding; and (7) that in the instant proceeding, under the facts and circumstances set forth in this opinion, the judge of the district court did not err in sustaining the appellee's motion to strike the appellant's answer and cross-petition from the files, in setting aside the restraining order theretofore issued by the probate judge and in denying appellant the injunctive relief prayed for in that pleading.

*State Highway Comm. v. Ford,* 142 Kan. 383, 46 P. 2d 849, on which appellant relies to sustain its position on the all decisive procedural question here involved is in no sense to be construed as warranting conclusions contrary to those just stated. Conceding, that on appellate review of that case, this court set aside an injunction which had been granted in a condemnation proceeding it took occasion to point out at the very beginning of the opinion that no question of procedure was presented for its determination. This, in our opinion, was a definite indication of its view the judge granting the injunction had no power or authority to do so in the condemnation proceeding itself but that since it had been granted erroneously, and the order was in existence, it would treat the case as though it had been progressed in the district court as an injunction action. The case is clearly distinguishable on the basis of what has been stated. Further distinguishing features appear from the fact that here the party instituting the condemnation proceeding challenged the right of the landowner to file the involved answer and cross-petition, on the basis no action was then pending in the court in which injunctive relief could be granted, at the first opportunity.

Heretofore we have stated that common-law remedies are available to landowners seeking to protect their interests in property involved in a condemnation proceeding. It follows we have no quarrel with decisions such as *Smouse v. Kansas City S. Rly. Co.,* 129 Kan. 176, 282 Pac. 183, and others of like nature cited by appellant in its brief, holding that injunction, brought by the landowner in a separate and distinct action in a court of competent jurisdiction, is a proper remedy where he contends that the condemning party is exceeding its powers, or where it is contended that the condemnation is ostensibly for a lawful purpose but really for an unlawful or improper one, such as a private use, or when an unnecessary amount of property is sought to be taken. However, it should be noted, these very same cases also effectively dispose of

appellant's contentions to the effect our conclusions respecting the procedural status of a condemnation proceeding, instituted under the provisions of 26-201 and 26-202, *supra,* leave it with no adequate remedy at law.

Having determined the appellee's motion to strike should have been sustained on the basis of the procedural objections raised by its terms there is no occasion to labor or consider other objections to the effect allegations of the answer and cross-petition failed to state facts sufficient to warrant the granting of injunctive relief. By the same token there is no necessity for discussion or disposal of the numerous and interesting contentions advanced by appellant with respect to the merits of the questions raised by the allegations of that pleading.

The judgment is affirmed.