OTTAWA HUNTING ASSOCIATION, INC., a corporation, *Appellant*, v. THE STATE OF KANSAS and HAROLD R. FATZER, Attorney General of Kansas, and ROSS BEACH, JR., HOWARD M. GILLESPIE, CHARLES E. KAUP, VERN R. MAYO, HUGH MILLER and FRANK F. YOUNG, members of the Forestry, Fish & Game Commission of Kansas, and COLBURN C. HOLMES, PAUL KEITH and JOHN R. SMITH, Commissioners, *Appellees*.

No. 39,762

STELLA THOMPSON, *Appellant*, v. THE STATE OF KANSAS and HAROLD R. FATZER, Attorney General of Kansas, and ROSS BEACH, JR., HOWARD M. GILLESPIE, CHARLES E. KAUP, VERN R. MAYO, HUGH MILLER and FRANK F. YOUNG, members of the Forestry, Fish & Game Commission of Kansas, and COLBURN C. HOLMES, PAUL KEITH and JOHN R. SMITH, Commissioners, *Appellees*.

(289 P. 2d 754)

Opinion filed
November 12, 1955.

*Douglas Hudson*, of Fort Scott, and *Oscar S. Brewer*, of Kansas City, Missouri, argued the cause, and *Howard Hudson* and *Douglas G. Hudson*, both of Fort Scott, were with them on the briefs for the appellants.

*Paul E. Wilson*, Assistant Attorney General, argued the cause, and *Harold R. Fatzer*, Attorney General, and *Noel Mullendore*, of Howard, *John H. Morse*, of Mound City, and *Harry C. Blaker*, of Pleasanton, were with him on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: These consolidated cases were injunction actions by landowners to enjoin an arm of the state from exercising the right of eminent domain with respect to their property.

Plaintiffs have appealed from orders sustaining demurrers to their evidence and denying injunctive relief.

The questions involved in the two cases are identical, and our decision will apply to both. The discussion will concern the action by Ottawa Hunting Association, Inc., a corporation, plaintiff in case No. 39,761.

In April, 1954, pursuant to G. S. 1949, 32-213, the Forestry, Fish and Game Commission of the state (hereinafter referred to as commission), acting through the attorney general, presented to the judge of the district court of Linn County a petition asking for the condemnation of tracts of land belonging to numerous landowners, including Ottawa Hunting Association, Inc., a corporation, plaintiff and appellant herein. A brief summary of the contents of that petition is found in *State v. Boicourt Hunting Ass'n*, 177 Kan. 637, 282 P. 2d 395, in which it was held that a landowner may not, in a condemnation proceeding, litigate the validity of the proposed condemnation and the right to appropriate property.

However, we have no question of procedure in the case now before us, for on May 13, 1954, plaintiff filed the instant action to enjoin the commission from appropriating its land.

A temporary restraining order was issued and we are advised that the *status quo* has continued to this date.

In a summary way it may be said the theory of plaintiff's petition is that the authority of the commission to condemn land exists only by virtue of and is limited by statute; that under applicable statutes the commission may appropriate land *only* for the purpose of estab-

lishing fish and/or game *preserves, refuges* and *sanctuaries*; that the condemnation proceeding is in fact an attempt on the part of that body to acquire lands for the purpose of establishing public *hunting* and *shooting grounds* on which bird life, game, waterfowl and wild life may be *hunted* and *destroyed*; that such proposed use is not a public use or for a public purpose and is contrary to the wording and intent of the statutes, and that if the statutes in question be so construed as to authorize the condemnation proceeding in question they are unconstitutional and invalid under the constitution of the state and constitute a denial of due process of law under the fourteenth amendment to the federal constitution.

The answer alleges that the condemnation proceeding was commenced in good faith and in the lawful exercise of the considered judgment of the commission, and denies the invalidity of the proceeding as alleged by plaintiff.

Upon the issues thus joined the parties proceeded to trial.

In view of the narrowed issue involved it is unnecessary to summarize the evidence in detail. In a general way the facts established are as follow:

The over-all project in question is known as the Marais des Cygnes Waterfowl Refuge Area, and, as planned by the commission, in co-operation with federal agencies, would consist of about 8,000 acres, 3,600 acres of which had previously been acquired. The condemnation proceeding in question was for the purpose of acquiring the remaining 4,400 acres, included in which is the tract of 233 acres owned by plaintiff and which had been used by its members for some years as a private hunting grounds. The condemnation was commenced pursuant to the adoption of an appropriate resolution by the commission. Dependent upon a number of factors, approximately 3,200 acres are to be inundated, and, when completed, also dependent upon a number of factors, not to exceed fifty per cent of the water area is to be opened to public shooting, regulated, however, by applicable state and federal laws and regulations pertaining to migratory waterfowl, and the like. In other words, it is planned to make the entire project into a game and wild life preserve with limited and regulated public duck shooting permitted on not to exceed one-half of the water area as in the opinion and consideration of the commission conditions warrant. Fishing would be allowed on the entire water area.

At this point reference should be made to certain applicable statutes.

G. S. 1949, 32-212, declares it to be the policy of the state to protect and propagate the fish, bird life (other than predatory and destructive birds), game and fur-bearing animals of the state, and to establish, from time to time, refuges and preserves for the same.

G. S. 1949, 32-213, confers upon the commission the right of eminent domain in acquiring necessary lands, water and water rights, and for carrying out the purposes for which the commission was created.

G. S. 1949, 32-214, authorizes the commission to take and acquire, in the name of the state, by donation, purchase, or through condemnation proceedings, title to lands for the purpose of establishing, improving, keeping and maintaining the same as public forestry, recreational grounds, fish and/or game preserves.

G. S. 1949, 32-215, confers upon the commission the power to establish, maintain and provide for sanctuaries in which game, game birds, fur-bearing animals and fish may breed or rest and replenish hunting and trapping grounds or fishing waters; to establish, maintain and improve recreational grounds for the purpose of affording recreational facilities to the citizens of the state, and to extend or consolidate lands or waters, or both, suitable for any of such purposes as the commission may desire.

G. S. 1953 Supp. 74-3302, among other things, provides for the rule-making power of the commission with respect to the enforcement of rules and regulations concerning the use and occupancy of land and property under its control, and authorizes the commission to provide and develop facilities for outdoor recreation.

In sustaining the commission's demurrer to plaintiff's evidence and denying injunctive relief, the trial court held that the commission had acted within the scope of its authority and in good faith, and that the development of the area in question, in co-operation with federal agencies, is for a public use and therefore valid.

In this court the gist of plaintiff's argument is that the extent of the commission's power and authority to exercise the right of eminent domain is to acquire land on which to establish a *preserve* or *refuge* for game and waterfowl; that to permit public *shooting*, even though regulated, is the direct antithesis of maintaining a *preserve, refuge,* or *sanctuary;* and further, that hunting ducks is a *private* purpose as contrasted to a public purpose and therefore

the acquisition of land for such alleged *private* purpose, even though full compensation be paid, is beyond constitutional and statutory limitations on the right of eminent domain. In other words, it is contended the commission has no power to appropriate private property for the purpose of creating a duck-hunting grounds.

The commission, on the other hand, contends that its appropriation of the land in question is for a *public* purpose; that properly regulated and controlled hunting of waterfowl by the public on public property is a *public* use of state lands, and, further, even though duck hunting be considered a *private* use and purpose, such hunting as here contemplated would be merely an *incidental* use of the property as contrasted to its *primary* public use.

One of the basic principles of our form of government is that no person can be deprived of his property except by due process of law, and it is equally fundamental that the legislature possesses no power to authorize the appropriation of one's property for a private usë or purpose. It is equally well settled that the legislature may authorize the acquisition and appropriation of private property for a public use provided the owner is compensated therefor. (*Irrigation Co. v. Klein,* 63 Kan. 484, 65 Pac. 684; *State, ex rel., v. City of Topeka,* 176 Kan. 240, 270 P. 2d 270.) The power of eminent domain, that is, the right to take private property for a public use, is inherent in a state and is not one granted by our constitution. (*Glover v. State Highway Comm.,* 147 Kan. 279, 285, 77 P. 2d 189.) An examination of authorities discloses that through the years it has been impossible for courts to define comprehensively the concept of a public use and to formulate a universal test, due, no doubt, to the diversity of local conditions and circumstances in an inevitably changing world.

The precise question presented here is one of first impression in this state. Plaintiff calls our attention to several decisions from other jurisdictions, among them being *Hampton v. Arkansas State Game & Fish Commission,* 218 Ark. 757, 238 S. W. 2d 950, and to the annotation found at 172 A. L. R. 174, as being persuasive on the proposition that the acquisition of private property for a public hunting or fishing grounds is not for a public use. However, a close examination of those authorities discloses either factual dissimilarities or that eminent domain was attempted to be exercised under statutory authority different from ours.

After a most careful consideration of the question involved, we

are of the opinion that this case was correctly decided in the court below. In so concluding we are not shutting our eyes to the fact that in many isolated instances the exercise of eminent domain appears to work a hardship upon the private property owner and oftentimes seems to be unjust, irrespective of the fact full compensation is paid. However, once the object sought is within the authority of the legislature, the right to realize it through the exercise of eminent domain is clear, for the power of eminent domain is merely the means to the end.

As heretofore shown, the legislature has declared it to be the policy of the state to protect and propagate fish, bird life, game and fur-bearing animals, and to establish and maintain refuges and preserves for the same within the state. Together with the authority to establish preserves, the commission also is authorized to establish, maintain and improve *recreational grounds* for the purpose of affording recreational facilities to the citizens of the state. In *State, ex rel., v. Atherton*, 139 Kan. 197, 30 P. 2d 291, this court, in discussing one phase of the forestry, fish and game act, said:

"Some of the purposes of the act are doubtless intended to mean works pertaining to the improvement and beautification of the state's own property —its fish and game preserves. These may fairly be regarded as *public improvements* which the constitution does not forbid." (p. 209.)

It is true the question here under consideration was not involved in that case, but we quote the above statement as throwing light on the over-all proposition.

Reducing the matter down to the specific facts before us, it of course must be conceded that, *literally* speaking, the act of *killing* ducks is not *preserving* them or providing them with a *refuge* or *sanctuary*. It also may be conceded that from the standpoint of human nature, sport and relaxation, duck hunting may, in a sense, be classified as that of a *private* purpose or endeavor, depending upon the whims and inclinations of the individual. Nevertheless, looking at the matter from the over-all standpoint, we think it must be conceded that the *right* to hunt ducks is inherent in all people, and therefore must be considered as a *public* purpose. In other words, hunting may be *personal* to the individual who does it, but the *right* to go hunting is *public*.

And there is still another reason why, in our opinion, the judgment of the trial court must be upheld. Assuming, solely for the sake of argument, that duck hunting is a private use and purpose,

the fact remains that when the over-all purpose, nature, size and character of the proposed project is taken into consideration, the conclusion is inescapable that the duck hunting here involved would amount to nothing more than an *incidental* use of the entire project, rather than the *primary* use, notwithstanding the fact that in its *present* status and ownership duck hunting undoubtedly has been the *primary* use to which plaintiff's members have put the specific property. In *Smouse v. Kansas City S. Rly. Co.*, 129 Kan. 176, 282 Pac. 183, following the rule laid down in *Irrigation Co. v. Klein,* supra, it was said:

"Appellant argues that this evidence discloses that a private use as well as a public use is to be made of this property and that this renders the condemnation proceeding unlawful. It is well settled, of course, that even when a party has the right of eminent domain he cannot condemn the private property of an individual for the private use of another who does not possess the right of eminent domain. It is also quite well settled that where both a public and a private use is to be made of the property sought to be condemned and the private use is the dominant, outstanding, or more important object of the condemnation, the proceeding must fail, . . . But if the private use to be made of the property is inconsequential compared to the public use, or subordinate thereto to the extent that it can be said to be only an incident thereof, then the fact that such private use is to be made of the property will not defeat the condemnation." (p. 186.)

We think the rule there stated is very applicable to the situation before us. Furthermore, there is nothing in the case to indicate that regulated and limited hunting on a portion of the entire project is not entirely consistent with a program of conservation and propagation of migratory waterfowl. In fact, common everyday experience and knowledge tell us that the two are consistent.

Much more on the subject could be said, but limitation of time and space forbids. All contentions advanced by plaintiff in the thorough presentation of its case have been examined and considered, but we are forced to the conclusion that the attempted exercise of the right of eminent domain is not unlawful on any of the grounds asserted. The judgment of the trial court is therefore affirmed.