No. 40,701

A. W. CLINE, *Appellant* and *Cross-Appellee,* v. KANSAS GAS AND ELECTRIC COMPANY, a Corporation, *Appellee* and *Cross-Appellant.*

(818 P. 2d 1000)

Opinion filed December 7, 1957.

*A. R. Lamb,* of Coffeyville, argued the cause, and *Paul A. Lamb,* of Coffeyville, was with him on the briefs for the appellant and cross-appellee.

*Jay W. Scovel,* of Independence, argued the cause, and *Thomas R. Scovel,* of Independence, and *Stanley Garrity,* of Wichita, were with him on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

PRICE, J.: This appeal arises out of a condemnation proceeding wherein the Kansas Gas and Electric Company, a corporation, sought to appropriate a right of way across land owned by A. W. Cline for the purpose of constructing an electric high line.

For convenience, we will refer to the condemner as the company and to the condemnee as the owner.

The commissioners in condemnation awarded the owner a total of $8,935 damages. He appealed to the district court, his notice of appeal setting forth that he

". . . is dissatisfied with and aggrieved by and intends to and does hereby appeal from the award of damages made by appraisers appointed by the District Court of Montgomery County, Kansas, in the above-entitled matter, to the District Court of said County, . . ."

Following trial in the district court, the jury awarded damages in a total amount of $8,500. In entering judgment for that amount the court allowed the owner interest from the date of taking on a portion of the judgment and assessed the costs equally between the parties.

The owner has appealed, specifying numerous errors, and the company has filed a cross-appeal, specifying error in the allowance of interest on a portion of the judgment and in dividing the costs.

At this point it should be stated that throughout the condemnation proceeding itself, and on appeal to the district court from the award of appraisers, the owner vigorously asserted and contended that the company did not possess the right of eminent domain; that its petition for condemnation did not state a cause of action; that the petition failed to show a public necessity for the condemnation; that the property sought to be condemned was not being condemned for a public use and purpose, and that he, the owner, was being deprived of his property without due process of law in violation of the Federal constitution.

The position of the trial court throughout the proceeding, and in the appeal from the award of appraisers, was that the only matter in issue was the question of damages to be awarded to the owner—that is, how much was he to be allowed for property actually taken and for damage to that remaining.

In thus limiting the issues the trial court was entirely correct.

In *State v. Boicourt Hunting Ass'n,* 177 Kan. 637, 282 P. 2d 395, it was held that a landowner may not, in a condemnation proceeding, litigate the validity of the proposed condemnation and the right to appropriate property. Later cases dealing with the general subject are *Board of Education of the City of Nickerson v. Gum,* 178 Kan. 397, 398, 285 P. 2d 780; *Ottawa Hunting Ass'n v. State,* 178 Kan. 460, 461, 289 P. 2d 754, (cert. denied, 352 U. S. 804, 1 L. ed. 2d 38, 77 S. Ct. 31); *Bumm v. Colvin,* 181 Kan. 630, 636, 312 P. 2d 827.

Adherence to this rule, however, does not mean that a landowner whose property is sought to be taken in a condemnation proceeding is without remedy. If he desires to litigate questions such as were attempted to be litigated here, he is entitled to file a separate independent action, such as for injunctive relief, and we are aware of no reason why the filing of such independent action would in any way preclude him from also appealing from the award of appraisers in the event he is dissatisfied therewith. In other words, a landowner

is not deprived of any of his rights with respect to the validity of the condemnation proceeding itself—the only requirement is that in order to enforce such rights he merely is required to raise them in a separate independent action.

In the case before us the owner did not follow that procedure, but attempted to litigate those questions in the condemnation proceeding, and, as stated, the trial court was correct in ruling that on the appeal from the award of appraisers the only issue before it was the question of damages.

It follows, therefore, that the owner's specifications of error touching questions of the validity of the condemnation proceeding are without merit and cannot be sustained, and we are concerned with only those alleged trial errors relating to the one matter in issue— the amount of damages.

The electric high line in question carries 69,000 volts, and the owner claimed damages for alleged radio and television interference in his home. In attempting to establish this element of damage he offered the testimony of a Mr. Young, a resident of Coffeyville, who was employed in electrical work for the Ozark Electric Company. This witness held a bachelor of science degree, with a major in electrical engineering, from Kansas State College, and had been engaged in electrical work off and on for many years. He was not a licensed electrical engineer, had not worked with television, but had engaged in radio repair work for about ten years. The company objected to the testimony of this witness as an expert relative to radio and television interference resulting from proximity of electric lines and moved that all of his testimony in that connection be stricken and the jury admonished to disregard it. The court expressed the opinion that the witness had not qualified himself as an expert in that phase of the electrical business and sustained the objection.

We believe the ruling was erroneous. The testimony of this witness covers some thirteen pages of the abstract, but no useful purpose would be served by detailing it. We have studied it, and are of the opinion the jury should have been permitted to consider it in connection with the other evidence in the case touching on the subject.

Next it is contended the court erred in refusing to admit evidence offered by the owner and in admitting evidence offered by the company over the objection of the owner.

In this connection, it is contended the court erred in permitting three witnesses for the company to testify, over objection, how much damage the owner had sustained by reason of the limitations placed upon his use of his property because of the condemnation of the fifty-foot right of way.

We believe the court erred in permitting such testimony in the form and manner in which it was elicited. The true measure of damage in a case such as this is the value of the property actually taken, together with the diminution in value of that remaining, and is to be based upon the best and most advantageous use to which the property may be put (*Mai v. City of Garden City,* 177 Kan. 179, 277 P. 2d 636), and we fail to see the competency or materiality of the theory of limitation of use.

Complaint also is made that the court unduly and erroneously restricted the owner's cross-examination of certain witnesses on behalf of the company.

In his opening statement, the owner told the jury that an 81-acre tract immediately south of his property had recently been sold for $111,000 for the purpose of developing it for high-type homes in a highly restricted district. One of the company's witnesses, a real-estate dealer, gave his opinion as to the amount of damage the owner had sustained by reason of the condemnation, and on cross-examination was asked concerning the sale of the 81-acre tract referred to. Objection was made and sustained. Another witness for the company, who, on direct-examination, had been permitted to testify as to how much damage the owner had sustained because of the limitations placed upon his use of the property by the condemnation, was asked on cross-examination if he had an opinion as to the value of the owner's property. He replied in the affirmative, but, on objection by the company, was not permitted to state his opinion. We think that both of these rulings were erroneous. While, as a general rule, it is true that the issue of what an owner should receive for land condemned may not be established by some specific or exceptional sale in the neighborhood, yet, in order to test the knowledge of witnesses and the value and weight of opinions given by them as to values, they may be asked on cross-examination concerning other transactions and as to sales of other property. (*Railway Co. v. Weidenmann,* 77 Kan. 300, 94 Pac. 146.) For a discussion of the general rule relating to the scope and extent of cross-examination in matters such as this, see also *Bourgeois v.*

In our opinion the erroneous rulings heretofore mentioned are of such gravity that it may not be said the owner's rights were not prejudicially affected thereby, and we therefore believe that he is entitled to a new trial.

In view of this disposition, it follows that discussion of the company's cross-appeal with respect to the allowance of interest on a portion of the judgment and the division of costs in the trial court between the parties becomes unnecessary. Costs naturally will follow whatever judgment ultimately may be rendered, and with respect to the matter of interest the subject is fully covered in the recent case of *Burke v. Board of Education of Common School District No. 110,* 181 Kan. 534, 313 P. 2d 272.

The judgment is reversed with directions to grant a new trial.

PRICE, J., dissenting in part: I am in complete accord with that portion of the decision in this case which holds that a landowner may not, in a condemnation proceeding, litigate the validity of the proposed condemnation and the right to appropriate property, and that in order to raise such questions he must bring a separate independent action.

I disagree, however, with the holding that rulings on the admissibility and rejection of evidence constitute reversible error. The testimony of the witness Young might well have been admitted, but, being merely cumulative of other evidence, its rejection did not result in prejudice. As to the testimony concerning limitations placed upon the owner's use of his property because of the condemnation, it occurrs to me the question merely called for an opinion touching on the matter of diminution in value of the remaining land. In view of other evidence as to values, I also am unable to agree that the restriction of cross-examination of some of the company's witnesses was prejudicial. All matters relating to the question of damages were fully aired in the trial. On two occasions the jury was taken out to view the property. In the light of the entire record it appears to me that the owner received a fair trial, and to that extent I respectfully dissent.

PARKER, C. J., and HALL, J., concur in the foregoing dissent.

SCHROEDER, J., concurring specially: It must be conceded under the present state of Kansas law that a landowner may not, in a condemnation proceeding, litigate the validity of the proposed condemnation and the right to appropriate property, and that in

order to raise such questions he must bring a separate independent action. Query, under this state of the law, how the landowner would fare where the condemning authority actually had no power of eminent domain in view of the fact that land under Kansas law is subject to an action for specific performance when placed under contract. This to me suggests a need for legislative attention. Under *Dick v. Drainage District No. 2*, 175 Kan. 869, 267 P. 2d 494, an injunction action becomes moot if the installations are complete at the time the Supreme Court hears the appeal.

Concerning the rulings of the trial court on the admissibility and rejection of evidence, it is only fair in my opinion to disclose what actually took place in the trial below since this case further suggests need of legislative attention in the field of eminent domain.

The trial court properly recognized the measure of damages to be applied in a condemnation action in presentation of the landowner's case in this condemnation appeal. It appears from the record that the trial court recognized the true measure of damage in a case such as this to be the fair market value of the land actually taken by the condemnation, plus the diminution in the fair market value of the remaining land not taken, and that the valuations were to be based upon the fair market value of the property for the best and most advantageous use to which it could be put. When the condemner presented its evidence, however, the trial court switched the theory upon which damages were to be proved.

It must be remembered that the right of way condemned for an electric high line in the instant case was *50 feet wide* and crossed two city lots and a 160-acre tract of land adjoining these lots adjacent to the City of Coffeyville, Kansas, owned by the appellant, A. W. Cline. According to Cline's testimony the total damages to the 160-acre tract of land by reason of the high line crossing it was $90,000.00 as determined in accordance with the measure of damages heretofore stated. In his opinion the market value of one of the lots was $2,500.00 and the other $2,000.00 and that the market value of these lots after the high line was placed over them was not one penny. It must further be remembered that the high line over this property was admitted to be a 69,000 volt high line with three wires, each carrying that voltage.

Other value witnesses testifying on the landowner's behalf were licensed real estate brokers from Coffeyville, Kansas, and while their testimony did not disclose valuations quite as high as the

landowner's testimony the values were generally consistent therewith.

Clyde C. Clark, called as a witness on behalf of the appellee, the Kansas Gas and Electric Company (defendant below), was a registered licensed realtor from Independence, Kansas. Note that this witness is from a city foreign to Coffeyville where the land is situated. The material testimony of Mr. Clark is as follows:

"Q. Mr. Clark, you have looked at and inspected Lots 1 and 2, Block 17, Cline's Westwood Addition?

"A. I did.

"Q. Do you have an opinion as to the amount of damage Mr. Cline has sustained because of the limitation placed upon his use of these two lots by the condemnation of this strip which it is agreed is 25 feet on each side of the line as it is now located?

"A. I have.

"Q. What, in your opinion is the damage he has sustained by reason of the limitation on that strip?

"Mr. Lamb: Object to that as not the proper measure of damage.

"The Court: Objection overruled.

"A. Ten dollars.

"Q. In your opinion is the balance of these lots damaged by reason of this right-of-way?

"A. No, sir.

"Q. Now, you have also inspected the northeast quarter of section 33-34-16, the tract immediately west of that?

"A. Yes, sir.

"Q. You have examined the right-of-way and the line on it?

"A. Yes, sir.

"Q. Now how much damage, in your opinion, has Mr. Cline sustained because of the limitations placed upon his use of the property by the condemnation of this strip, which it is agreed is 25 feet on each side of the line as it is now located and roughly three and a half acres.

"Mr. Lamb: To which we object as incompetent, irrelevant and immaterial, and not the proper method in which to ascertain the damage.

"The Court: Objection overruled.

"A. One thousand dollars."

On cross examination he was asked:

"Q. Take the Tyler tract south of this did you know it was sold, eighty acres, for over $110,000.00?

"Mr. Scovel: Object to this as improper cross examination, there is no testimony with reference to the value of this tract, he stated in his opinion it was not damaged other than the limitation on its use. Had he been of the opinion that the balance of the tract not taken was damaged there would have been testimony as to the value before or after, he didn't state whether he thought that was worth a thousand dollars or a hundred thousand dollars.

"Mr. Lamb: This goes to the qualification of the witness.

"The Court: He testified as to that value and said there was none.

"Mr. Lamb: But he says the land was damaged ten thousand dollars.

"Mr. Scovel: One Thousand dollars.

"The Court: I don't believe inquiry into his idea of value in that way would be proper cross examination."

Arch McKown, a licensed real estate broker engaged in the insurance and real estate business for fifteen years at Independence, Kansas, was called to testify for the appellee and was asked on direct examination the following question:

"Q. Now, do you have an opinion as to how much damage Mr. Cline sustained by reason of the limitation placed upon his use of these two lots by the condemnation of this strip which it is agreed is 25 feet on each side of the line as it is now located?

"Mr. Lamb: To which we renew our objection for the reason that the same is not the proper question to secure the measure of damage.

"The Court: Well, the rule is that the measure of damage that the courts have recognized is the difference in value before and the value after.

"Mr. Scovel: This is the limitation of the use.

"The Court: You may answer.

"A. Yes."

Floyd Fair, a licensed real estate broker from Coffeyville, was called on behalf of the appellee and was asked the following questions on direct examination to which he gave the following answers:

"Q. Both the two lots on the east side of the road and the 160 acres?

"A. Yes, sir.

"Q. Now, you noticed that there is a Kansas Gas & Electric Company line overhangs these two lots; Lots 1 and 2, in Block 17, but there is no pole on either lot?

"A. Yes.

"Q. Now, how much damage, in your opinion, has Mr. Cline sustained by the limitations placed upon his use of these two lots by the condemnation of this strip, which it is agreed is 25 feet on each side of the line as it is now located?

"Mr. Lamb: Same objection as heretofore.

"The Court: Objection overruled.

"A. I would say twenty dollars.

"Q. Has the remainder of these two lots been damaged as a whole by reason of the limitations of use of this strip?

"A. No, sir.

"Q. Now coming back with reference to this 160 acres, how much damage, in your opinion, has Mr. Cline sustained because of the limitations placed upon his use of this 160 acres by the condemnation of this strip, which it is agreed is 25 feet on each side of the line as it is now located, and occupies, approximately three and a half acres?

"Mr. Lamb: Same objection.
"The Court: Objection overruled.
"A. I had a value of Five Hundred Dollars.
"Q. Has the remainder of the tract, as a whole, been damaged by reason of the limitation of the use of this strip?
."A. I don't think so."

On cross examination he was asked the following questions:

"Q. Do you have an opinion as to the value of this Cline 160 acres?
"A. Yes, sir.
"Q. What is your opinion?
"Mr. Scovel: Object to that as immaterial.
"The Court: Objection sustained."

It is clear from the foregoing testimony that the trial court permitted the appellee to present its case upon a theory of damages entirely different from that presented by the appellant in the case and even went so far as to deny the right of cross examination in accordance with the theory of damages upon which the appellant's case was presented.

Regardless of what a jury may have been instructed with respect to the 'measure of damages in a condemnation action, the manner in which the testimony was presented to the jury, in view of the objections and rulings of the court in the presence of the jury, could have had no effect other than to confuse the jury thoroughly.

The testimony of expert witnesses must be weighed by the jurors just as the testimony of any other witness. Only by permitting cross examination of witnesses to the fullest extent in a condemnation action can a jury be in any position to determine the probative value of opinion testimony. It must be particularly noted that two of appellee's witnesses were not even licensed real estate brokers from Coffeyville where this property was located. In this connection, Mr. Clark, called by the appellee, testified on cross examination that he was not acquainted with the value of lots in Coffeyville; that he had never bought or sold any lots in Coffeyville; that he did not know of any lots sold in Westwood or any of the Cline Additions; and he did not make any inquiry as to any lots sold in that vicinity. The limitation on cross examination of a witness of this type was highly prejudicial because the appellant was given no opportunity to test the opinion of the witness relative to values which were the proper measure of damages upon which to try this case. Furthermore, the wide divergence in values between the witnesses of the appellant and those of the

appellee made it extremely important that the jury have the benefit of cross examination of witnesses for both parties, not just the landowner's witnesses, to be in a position to properly weigh opinion testimony before it. I seriously question that a real estate broker who is not familiar with land values by reason of experience in the immediate locality of the property condemned is even qualified to testify as an expert. Yet it is familiar to the Bench and Bar that real estate brokers from counties foreign to the land are sometimes called as expert witnesses in a condemnation action and paid $100.00 per day for their services by the party calling each of such witnesses.

At the motion for a new trial the appellant, A. W. Cline, gave sworn testimony as proffered testimony which was excluded by the rulings of the trial court upon the trial of the action.

Under the present state of Kansas law this testimony was properly excluded, but it is material as information for the Bench and Bar to indicate the inadequacy of condemnation laws in Kansas to protect the rights of a landowner in a condemnation action.

This testimony consisted of a conversation between A. W. Cline, the appellant, and representatives or agents of the appellee, the Kansas Gas and Electric Company, prior to the condemnation action. Mr. Cline testified:

"Q. Did you have a conversation with him there before this high line was put across your place?

"A. Yes, sir.

"Q. Tell us what was said at that time between you and this man Sutter.

"A. He said he was very sorry how the thing was going across and he would do what he could about it, but he said it was quite and [an] extensive operation. I asked him how much it would cost to by-pass the place, and after doing some figuring there he said, well what would it be worth to you. I said, after doing some more figuring, 'I will give you $29,000.00 spot cash to by-pass this place and stay off the subdivision ['] [the 160-acre tract in question]. He said, that sounds all right to me, I will go to Wichita tomorrow and take it up with the officers over there, and he left.

"Q. Did you see him later?

"A. Yes, sir.

"Q. Did you have a conversation with him relative to that matter?

"A. Yes, sir.

"Q. What was said in that conversation?

"A. He came to my house a few days after that, he said, Abe, I am awfully sorry but they have decided to go across where they have surveyed, and they have turned down your offer."

The jury returned a verdict for $8,500.00.

I concur in the court's opinion that the owner's rights were prejudicially affected by the erroneous rulings of the trial court and that a new trial should be granted, and further desire to emphasize a great need in Kansas for adequate legislation in the field of eminent domain so that the rights of landowners may be adequately protected in accordance with constitutional safeguards. (See, *Moore v. Kansas Turnpike Authority*, 181 Kan. 840, 317 P. 2d 384, and *Jenkins v. Kansas Turnpike Authority*, 181 Kan. 862, 317 P. 2d 401, particularly the dissenting opinions thereto.)