No. 40,470

In the Matter of the Condemnation of Land for Kansas Turnpike Project, KENNETH W. SHREVE, et al., *Appellees*, v. KANSAS TURNPIKE AUTHORITY, *Appellant*.

(312 P. 2d 595)

Opinion filed June 8, 1957.

*Robert M. Cowger*, of Topeka, argued the cause, and *Robert M. King*, of El Dorado, *Morris Moon*, of Augusta, and *Bruce Works*, of Topeka, were with him on the briefs for the appellant.

*Frantz G. Loriaux*, of Augusta, argued the cause, and *Fred R. Vieux*, of Augusta, was with him on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This is another appeal from a judgment in a condemnation proceeding.

In 1955 the Kansas Turnpike Authority, as authorized by G. S. 1955 Supp., 68-2006, instituted a proceeding under the provisions of G. S. 1949, 26-101, in the district court of Butler County, to condemn land, belonging to the estate of Guy Shreve, deceased, for turnpike purposes. Pursuant to this proceeding the Authority took a strip of land, consisting of 46.71 acres, running in an easterly and westerly direction through the center of the southeast quarter of section 22, township 26, range 4, in Butler County. This left the estate with two tracts of land in such quarter section, one consisting of 69.29 acres to the north and the other of 45 acres to the south of the condemned tract. A timely appeal, as permitted by G. S. 1955 Supp., 26-102, was taken to the district court from the award of the appraisers by the landowners, who are conceded to be the heirs-at-law of Guy Shreve.

The action resulting from the appeal was docketed in the district court and came on for trial in due course. During the trial the evidence adduced by the parties, respecting the value of the involved real estate, both before and after the taking, was extremely conflict-

ing. However, no question is raised with regard to qualifications of the witnesses who testified with respect thereto. Five witnesses testified for the landowners on this subject and five for the Authority. Their testimony, since it is highly important to a disposition of appellate issues involved, will be briefly summarized, without reference to names or specific values placed on the property by any witness.

Witnesses for the landowners testified the fair and reasonable market value of (1) the entire 160 acres, before the taking, on May 26, 1955, was from $32,000 to $40,000; (2) the 46.71 acres taken was from $9,400 to $11,677.50; (3) the 113.29 acres remaining, before the taking, was from $22,600 to $28,250; and (4) the 113.29 acres remaining, immediately after the taking, was from $8,475 to $11,700. On the other hand witnesses for the Authority testified that the fair and reasonable market value of (1) the entire 160 acres, before the taking, was from $16,000 to $20,000; (2) the 46.71 acres taken was from $4,671 to $5,875; (3) the 113.29 acres remaining, before the taking, was from $11,329 to $14,161; and (4) the 113.29 acres remaining, immediately after the taking, was from $5,664 to $10,175.

With evidence of values, as heretofore related, the court gave written instructions, to which no objections were made, and then submitted the cause to a jury which ultimately returned a general verdict in favor of the landowners in the sum of $21,736.80 along with its answers to special questions, submitted by the court, which read:

"Q. No. 1. What do you find to be the highest and best use of the Shreve property before the taking as of May 26, 1955. Answer: Live stock and general farming.

"Q. No. 2. What do you find to be the fair and reasonable market value of the entire 160 acres before the taking as of May 26, 1955? Answer: $30,800.00.

"Q. No. 3. What do you find to be the fair and reasonable market value of the 46.71 acres taken for turnpike purposes as of May 26, 1955? Answer: $8,991.68.

"Q. No. 4. What do you find to be the fair and reasonable market value of the 113.29 acres remaining before the taking on May 26, 1955? Answer: $21,808.32.

"Q. No. 5. What do you find to be the fair and reasonable market value of the 113.29 acres remaining immediately after the taking on May 26, 1955? Answer: $9,063.20."

Following the return of the jury the prevailing parties moved for judgment. The court took this motion under consideration and advised counsel it would not enter judgment until the time for the

filing of a motion for a new trial had expired and in the event such a motion was filed would first hear arguments thereon. Thereafter, the Authority filed a motion for a new trial, based on all statutory grounds, which was presented, heard and overruled. Subsequently the court approved the general verdict and rendered judgment in accord therewith. Thereupon the Authority gave notice of appeal and brought the case to this court, under specifications of error, charging that the trial court erred in overruling its motion for a new trial.

The first error assigned by appellant is that the trial court should have granted it a new trial for the reason it erred in overruling its motion for a mistrial, based on inflammatory remarks made by one of the counsel for appellees, during the cross-examination of one of appellant's witnesses, in the presence of the jury. We have searched the record on this point and find nothing in the remarks made by counsel to the witness in question which would warrant any such conclusion. It is true, the record discloses, counsel did ask some leading questions with respect to the answer made by the involved witness to a previous question, to which appellant made no objection, in an effort to obtain a more favorable response from the witness to the prior question. However, when appellant objected to this line of questioning and moved for a mistrial because of it the court admonished the jury that the statements made by counsel for appellees were not to be considered by it as any evidence in the case and were to be disregarded. We believe the trial court did all that was required under the existing circumstances. Of a certainty, it did not err in refusing to declare a mistrial on appellant's assumption such statements had inflamed the jury and thereby precluded it from having a fair trial.

Another contention advanced is that the statements made by one of appellees' counsel during his final argument to the jury were prejudicial and thus afford sound ground for holding that the trial court erred in overruling the motion for a new trial. We are not disposed to labor this contention. The record discloses that appellant made no objection to such argument when it was being made, that it asked for no ruling by the trial court with respect thereto, and requested no instruction to the jury concerning it. In that situation misconduct of counsel in argument to the jury is not available as a basis for reversal of the judgment. See *Mai v. City of Garden City*, 177 Kan. 179, 277 P. 2d 636, which holds:

"Rule followed that misconduct of counsel in argument to the jury is not available as ground for reversal where no objection was made to it and no request was made for ruling thereon or for an instruction to the jury concerning it." (Syl. ¶ 6.)

Finally it is urged that the verdict was so excessive as to show bias and prejudice on the part of the jury and so patently excessive as to shock the conscience of this court. It is for that reason we have heretofore summarized the widely varied testimony of the witnesses of the respective parties regarding the value of the property and quoted at length the findings of the jury which clearly show that the general verdict was well within the realm of the evidence. Indeed, in oral argument, counsel for appellant, with commendable candor, was frank enough to so concede. Based on our careful and painstaking examination of the entire record, it appears the cold, hard and inescapable facts are that the jury, as it had a right to do, believed the testimony of appellees' witnesses with respect to the fair and reasonable market value of the involved property and rejected the testimony of appellant's witnesses on that subject. Moreover it further appears, that while sitting as the thirteenth juror for purposes of ruling on the motion for a new trial, the judge of the district court who, like the jurors and unlike this court, had an opportunity to observe the candor and fairness of the witnesses as they testified, reached a similar conclusion as to the weight to be given the testimony. In the face of all these facts and circumstances it is asking too much of this court to hold that the verdict of the jury was the result of passion and prejudice or reach a conclusion such verdict was so patently excessive as to shock its conscience.

The judgment is affirmed.