### No. 41,495

In the Matter of the Condemnation of Land for State Highway Purposes, ORLANDO L. ANDRES, et al., and ESTHER ANDRES, et al., *Appellees,* v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(345 P. 2d 1004)

Opinion filed November 7, 1959.

*Charles J. Carroll,* of Topeka, argued the cause, and *W. B. Kirkpatrick,* assistant attorney general, *Jerry Ann Foster,* of Topeka, and *Arnold C. Nye,* and *J. Sidney Nye,* both of Newton, were with him on the briefs for the appellant.

*John Callahan,* of Wichita, and *Lelus B. Brown,* of Newton, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, C. J.: This is a highway condemnation appeal.

The facts and proceedings, as disclosed by the record presented, giving rise to the appeal are not only informative but important to its decision and should be detailed.

Early in 1958 the State Highway Commission instituted a pro-ceeding, under G. S. 1949, 26-101 and G. S. 1957 Supp., 26-102, to

condemn 38.19 acres of land located in Harvey County, on which there was a growing crop of wheat, for the acquisition of a highway right of way.

At the time of the institution of the proceeding several parties had an interest in the property.

Under the terms of a valid and existing divorce decree Orlando and Esther Andres held legal title to the land, their interest being 60% and 40%, respectively, in the event such land was condemned; each also owned an undivided ⅛ interest in the growing crop of wheat.

Willis Andres, a brother of Orlando, was farming the land and, under the terms of an existing lease, owned a ¾ interest in the growing crop.

After giving proper notice to interested parties the appointed appraisers made their appraisement of the involved real estate and filed their report thereof on April 29, 1958, with the clerk of the district court. Such report, omitting a description of the real estate and other language of no importance thereto, reads:

"Orlando L. Andres, 101 N. Broadview, Wichita, Kansas; Esther Andres, 127 S. Pine Street, Newton, Kansas; subject to the tenancy of Willis G. Andres, RFD 5, Newton, Kansas.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"APPRAISEMENT:
"* Land Taken                                          $20,240.70

.   .   .   .   .   .   ..   .   .   .   .   .   .   .

"TOTAL    $20,240.70

"* Includes crop loss of $1145.70 for wheat to be impounded and payable only in the event the crop is not harvested. If harvested this amount to be returned to the State Highway Commission."

On April 29, 1958, the full amount of the appraisement was paid into the hands of the clerk of the district court of Harvey County by the condemner.

On May 3, 1958, the condemner filed a motion, seeking an order of the court to impound funds then on deposit for the other tracts (also listed in the appraisers' report but not here involved) and "Tract No. 1—Orlando L. Andres, et al, Wheat Crop, $1145.70." Among other things such motion stated: "—that impounding of the stated amounts is necessary to secure the rights of the State Highway Commission in the funds so designated as awards for wheat—."

On May 26, 1958, upon motion of the condemner, the court made the following order:

"Tract No. 1: Wheat award of $1145.70 as shown in Appraisers' Report should be and is released to the owners and tenant as therein named, and said ownership of said crop on said tract is decreed in the State Highway Commission, petitioner, in said action."

We pause here to note that much of what has been heretofore related has reference to what was done in the first stages of the condemnation proceeding and hence, although required for factual and certain post trial purposes, is of little importance to the trial in district court wherein the question of the sufficiency of the appraisers' award was determined.

In this jurisdiction it is well-established no action is pending in a condemnation matter until an appeal has been taken from the appraisers' award; and that until that time it is not a judicial proceeding but merely an inquisition (*State Highway Commission v. Griffin*, 132 Kan. 153, 155, 294 Pac. 872; *Glover v. State Highway Comm.*, 147 Kan. 279, 286, 77 P. 2d 189; *State v. Boicourt Hunting Ass'n.*, 177 Kan. 637, 644, 282 P. 2d 395; *Kansas Homes Development Co. v. Kansas Turnpike Authority*, 181 Kan. 925, Syl. ¶ 1, 317 P. 2d 794; *Smith v. Kansas Turnpike Authority*, 183 Kan. 158, 159, 325 P. 2d 63, citing cases).

The effect of taking an appeal, pursuant to the provisions of 26-102, *supra*, is also settled. See *Moore v. Kansas Turnpike Authority*, 181 Kan. 840, 317 P. 2d 384, which holds:

"Following *Federal Land Bank v. State Highway Comm.*, 150 Kan. 187, 92 P. 2d 72, whenever, under Laws 1937, ch. 226 § 1 (G. S. 1955 Supp., 26-102 [G. S. 1957 Supp., 26-102]), an appeal is taken to the district court, either by the petitioner or by the landowner or by a lien holder from an appraisement made in proceedings in eminent domain had under G. S. 1949, 26-101, *et seq.*, the effect is to bring to the district court in its entirety the question of the sufficiency of the award, and the trial of that issue in the district court is conclusive on all of the parties, subject only to their right of appeal to the supreme court." (Syl. ¶ 2.)

And page 929 of the opinion in *Kansas Homes Development Co. v. Kansas Turnpike Authority*, supra, where it is said:

". . . The question of the sufficiency of the award is before the district court on appeal and all parties having an interest in the land, including the district as in the instant case, should assert their interest in the action pending in the district court, and their rights, if any, may be established in that action. (*Moore v. Kansas Turnpike Authority*, supra; *Collingwood v. Kansas Turnpike Authority*, [181 Kan. 838, 317 P. 2d 400] supra; *Jenkins v. Kansas Turnpike Authority*, [181 Kan. 862, 317 P. 2d 401] supra.)

The status of an appeal and the manner in which it shall be tried

when an interested party appeals from an award of the appraisers in a condemnation proceeding, such as is here involved, is equally well-established. See 26-102, *supra,* which expressly directs, and *Glover v. State Highway Comm.,* 282, *supra,* and *Federal Land Bank v. State Highway Comm.,* 150 Kan. 187, 92 P. 2d 72, which hold, that when a written notice of appeal is filed with the clerk of the district court "an action shall be docketed and tried the same as other actions."

On May 28, 1958, Orlando filed a notice of appeal from the April 29 appraisal of Tract 1, "in which report damages were allowed in the amount of $19,095.00 for the taking of the above described real estate for public use." This appeal was docketed in the district court as case No. 13,745.

On the same date Esther filed a separate notice of appeal which according to the counter abstract, appears to have recited she was appealing from the appraisal of Tract No. 1 awarding damages for "Land taken (including crop loss of $1145.70 for wheat) $20,-240.70." Her appeal was docketed in district court as case No. 13,753.

From the same source it appears that on June 11, 1958, which, it is to be noted, was after each of the above-mentioned appeals had acquired the legal status of an action within the meaning of that term as used in the statute (26-102) and the decisions last cited, the district court made an order of distribution as to Tract 1, wherein it directed that out of the total amount paid in by the condemner, pursuant to the appraisers' award, the sum of $1145.70, allowed by the appraisers for the wheat crop, be paid 2/3 to the tenant (Willis Andres) and 1/6 to Orlando and 1/6 to Esther, and the balance of such award, amounting to $19,095.00, be divided and paid 60% to Orlando and 40% to Esther, as per the divorce decree. It further appears payments were made to the respective parties in accord with this order. The record fails to disclose that any objections, either as to form or substance, were made to this order and the condemner makes no claim of error with respect thereto.

On November 6, 1958, the condemner moved to consolidate the separately docketed appeals of Orlando and Esther under 26-101, *supra,* and the case of *Moore v. Kansas Turnpike Authority,* supra. This motion was granted and such appeals were properly consolidated for trial (See *Moore v. Kansas Turnpike Authority,* Syl. ¶ 1, supra).

On November 19, 1958, after the call of the consolidated appeals for jury trial, certain matters with respect to the cause were discussed in open court in the presence and hearing of the prospective jurors. At that time counsel for Esther moved to dismiss her appeal, "with reference to the crop—the crop only; the crop damage awarded—leaving the only issue the value of the land taken." He then inquired "Is that correct?" Counsel for Orlando replied "Yes, sir." Counsel for the condemner, who were present and to whom the inquiry of counsel for Esther had also been directed, made no response. The court then said "Very well Gentlemen." Thereupon all parties having announced ready for trial, a jury of twelve was examined, empanelled and sworn to hear the cause.

It is neither necessary nor required that we labor at any length the opening statements, the evidence adduced or the instructions submitted to the jury during the trial. However, for purpose of disclosing the theory on which the cause was tried and submitted to that body it may be said:

That with respect to the opening statements and the evidence the landowners' counter abstract contains certain statements which, without denial on the part of the condemner, read:

"There was no mention of growing crops in the opening statements of the landowners or Condemnor. The Landowners expert witnesses made no mention of the growing wheat on said land on May 21, 1958, and testified that the best use to which the land was adaptable was industrial or commercial, gave their reasons and their opinions as to value.

"The Condemnor's expert witnesses, in stressing their opinion that farming was the best use to which the land was adapted, made mention that there was a growing crop on said land on the date of taking, but never attempted to place a dollar value on said crop. Each of condemnor's witnesses stated their opinion as to the per acre value of said land."

And that our independent examination of the instructions leads to the inescapable conclusion, the jury was instructed, in accord with the trial court's theory that the question of the value of the wheat crop was not an issue in the case, in such manner as to lead it to believe its obligation was to determine the value of the land actually appropriated and taken for highway purposes, without giving any consideration whatsoever to the value of the wheat crop growing on such land at the time it was taken and/or appropriated by the condemner.

That the case was tried and determined on the theory just

mentioned is evidenced by the verdict submitted by the court and returned by the jury on November 21, 1958, which reads:

"We, the jury empanelled and sworn in the above entitled case, do upon our oaths find for the *appellants* in the sum of $631 50/100 per acre." (Emphasis supplied.)

In this connection we note that, since they were the only persons appealing from the appraisement, it must be assumed the term "appellants," as used in the verdict, is limited to Orlando and Esther as the owners of the land.

On the same day the verdict was returned the trial court, after accepting, approving and making it a part of its judgment, discharged the jury. Then, following a request by the landowners for a computation of the amount of the judgment, it found in substance:

That the 38.19 acres of land was condemned by the Commission, which tract was owned on the date of appropriation by the appellants, Orlando and Esther.

That the appraisers appointed to appraise the land awarded the appellant landowners the sum of $19,095.00 for the land taken.

That the verdict for the taking of the 38.19 acres of land was in the amount of $24,116.98, of which $19,095.00 had been paid, leaving a balance of $5,021.98, for which sum appellants, Orlando and Esther, were entitled to judgment.

Thereupon, and based on such findings, the trial court rendered the following judgment:

"It Is Therefore Considered, Ordered, Adjudged and Decreed on this 21st day of November, 1958, that the appellants, Orlando L. Andres and Esther J. Andres, have judgment against the State Highway Commission for the sum of $24,116.98 for the 38.19 acres of land taken by the said State Highway Commission from appellants, of which amount $19,095.00 has been paid, leaving a balance due of $5,021.98."

The day after rendition of the judgment the condemner filed a motion for a new trial. Two days later it withdrew such motion. The result of the action last indicated is that trial errors are not subject to review in this appeal. See *Andrews v. Hein,* 183 Kan. 751, 753, and cases there cited, 332 P. 2d 278. See, also, *Atkinson v. State Highway Commission,* 184 Kan. 658, 662, 339 P. 2d 334.

On January 19, 1959, the Commission perfected the instant appeal under a notice which, for present purposes, may be said to have stated it was appealing from the judgment made and entered by the trial court on November 21, 1958, wherein the trial court found

"(1) that the Commissioners awarded $19,095.00 for the value of the land taken; and (2) that only the sum of $19,095.00 has been paid leaving a balance of $5,021.98 unpaid; and wherein judgment in favor of said plaintiffs in the sum of $5,021.98 was rendered by said Court and wherein the amount of said judgment was incorrectly computed by said Court upon the verdict."

Before turning to questions raised on appeal it should be stated its obligation to the Bench and Bar impels the court to point out that its action in setting forth the facts at length in this opinion is due to a desire on its part to insure a proper understanding of what the case is about and is in no sense to be construed as indicating a view the procedure of record in either the initiatory proceeding or in the trial of the action is to be considered as a model to be followed in future eminent domain cases.

The first contention advanced by appellant is that the trial court erred in not taking judicial notice at the time of entering judgment that the original award of the appraisers was in the sum of $20,240.70 for the value of appellees' land taken in this appeal.

In approaching this contention it may be conceded, at the outset, that in the post trial proceeding required for the trial court to render judgment on the verdict for the proper amount due, where—as here—payments had been paid into court by the condemning authority, pursuant to 26-102, *supra,* the court should look to the record in order to determine the amount previously paid in by the condemner, as well as the purpose and/or purposes for which it was paid in and disbursed to the parties. However, it does not follow, as appellant would seem to suggest, that in that proceeding the court was limited to consideration of the award or any particular portion thereof in determining the amount for which its judgment was to be rendered. In its determination of that question it had the right to look at the entire award and all other portions of the record in the inquest proceeding that might throw light on that subject. Moreover, it had the right to take into consideration the purposes for which amounts paid in had been disbursed, pursuant to its orders, without objection, after the appeals from the award had acquired the legal status of an action.

Turning to the record as presented we find (1) the appraisement, which *includes crop loss of $1,145.70 for wheat to be impounded;* (2) the condemner's motion filed in the inquest proceeding, requesting that the $1,145.70 for the wheat crop be impounded

and stating that the impounding of such amount was necessary to secure the rights of the Commission in funds so designated as *awards for wheat;* (3) the court's inquest order of May 26, 1958, based on motion of the condemner, stating that the wheat award of $1,145.70, as shown in the appraisers' report, should be and is released to owners and tenant therein named, and the ownership of the crop on said tract is decreed in the petitioner, Commission; (4) the trial court's order of June 11, 1958, directing that out of the total amount paid in by the condemner the sum of $1,145.70, allowed by the appraisers for the wheat crop, be paid 2/3 to the tenant (Willis Andres) and 1/6 to Orlando and 1/6 to Esther and the balance of such award amounting to $19,095.00 be divided and paid 60% to Orlando and 40% to Esther; (5) that payments were made to the respective parties in accord with such order without objection or claim that the order was erroneous; and (6) that on the trial of the action in district court the case was tried and submitted on the theory the wheat crop on the land appropriated had been condemned and paid for, as separate and distinct from the land itself, and was not involved in the action.

Under the foregoing conditions and circumstances, and others related in the opinion, we do not believe it can be successfully argued that the trial court erred in the post trial proceeding wherein it held, in substance, that the appraisers' award was to be construed as awarding the holders of the legal title to the land involved the sum of $19,095.00 for the land and the landowners and the tenant the sum of $1,145.70 for the growing wheat crop. Of a certainty, when viewed in the light of all such conditions and circumstances, it cannot be said the appellant has made it affirmatively appear that portion of its judgment was erroneous. In that situation the established rule (See *e. g., State, ex rel., v. Henderson,* 179 Kan. 142, 292 P. 2d 718), that a presumption of validity attaches to a judgment of the district court until the contrary is shown, and before this court will set aside a judgment it must affirmatively be made to appear by an appellant that the judgment is erroneous, has application. It follows the first contention cannot be upheld.

Appellant's second contention is that the trial court erred in rendering a judgment which reduced the original award of the appraisers by an amount which represented crop damage, when the jury's verdict, based on the evidence and instructions at a

trial *de novo* encompassed all of the damages the appellees had suffered, including the crop damage. What has been heretofore stated and held establishes that the two basic premises on which appellant founds this Hydra-headed contention are fallacious, hence it requires no further discussion.

The third contention presented and argued is that the trial court erred in entering a judgment altering the jury's verdict. The short and simple answer thereto is that in the post trial proceeding, to which we have heretofore referred, the court gave full weight to the verdict and merely determined the amount due and payable to the appellees under its terms, after giving appellant credit for the amount it found had been theretofore paid in and disbursed on the land to which appellant had acquired title and possession under and by virtue of the condemnation proceeding.

In conclusion it should be stated we note, but do not pass upon, portions of the record and contentions made by the parties regarding appellant's motion for judgment upon the general verdict, filed three days after the judgment had been rendered; and its motion for additional time to file objections to the journal entry and to defer consideration of such journal entry, filed six days after that instrument, signed by the trial judge and approved by counsel for the appellees, had been filed in the office of the clerk of the district court, allegedly in violation of Rule 49 of this court relating to district courts. All parties concede neither motion was ever ruled upon by the district court. In that situation it suffices to say the merits of the motions, although interesting from an academic standpoint, have no place in this appeal and that questions raised by the parties with respect thereto present no issues which are subject to appellate review.

The judgment is affirmed.

SCHROEDER, J., not participating.