The Kansas City & Topeka Railway Company v. Eliza Splitlog et al.

1. Value of Land — *Incompetent Evidence.* In an action to recover the value of a tract of land, appropriated by a railway company for a right-of-way, which, at the time of its condemnation, was not platted as a part of a city, but was in use as farming land, it is erroneous to permit witnesses to testify to the value of lots on the principal business street of a city near by. The value of such lots furnishes no proper measure by which to ascertain the value of the land taken.

2. ———— *Evidence — Error.* In such a case, it is also error to permit a witness to testify to the size of lots upon said business street, the number of such lots contained in an acre, and the value of such lots.

3. Jury, *to Value Land, and How.* The jury are to value the land appropriated as a whole in the condition it was immediately before it was condemned, and are not to consider what it would bring if divided into lots and blocks, and made a part of the city.

*Error from Wyandotte District Court.*

The case is stated in the opinion.

*M. A. Low, W. F. Evans,* and *Hutchings & Keplinger,* for plaintiff in error.

*W. M. Rush, jr.,* for defendants in error.

Opinion by STRANG, C.: Appeal from the report of commissioners assessing damages for land taken by the plaintiff for a right-of-way. Amount of damages assessed, $32,760. Trial had on the appeal in the district court, before a jury, March 29, 1888, resulting in a verdict and judgment for the appellants in the sum of $49,101.93. The plaintiff presented a motion for a new trial, which was overruled, and it brings the case to this court, and alleges that several errors occurred in the trial of the case below, for which it should be reversed.

The first error complained of is the admission of the following evidence of the witnesses Thomas Orr and E. W. Anderson. Thomas Orr was asked the following question: "What was property down there on Eleventh and Kansas avenue, and from there out to Twelfth and back to Tenth — what was that worth?" Answer: "Worth just as much as it is now." By Mr. Hutchings: "Wait; we object to the question upon the ground it is not the property in controversy; those are town lots, situated upon streets, while the property in controversy is unoccupied land; it is irrelevant to the inquiry here." By the court: "The question asked the witness is as to what this land on the corner of Eleventh and Kansas avenue was worth last fall, and he may answer that question by stating what he thinks it was worth at that time." (To which ruling of the court the defendant duly excepted.) A. "I considered it worth just as much then as it is now." Q. "What is it worth now?" (Objected to by the defendant; same as last objection. Objection overruled by the court. Defendant duly excepted.) A. "I paid at the rate of $5,500 an acre, without improvements." By Mr. Hutchings: "We object to that." By the court: "This last answer is stricken out." Q. "State what, in your opinion, it was worth at that time. Never mind what you paid; just give an opinion what

land along there was worth." By Mr. Hutchings: "We object to the question as to what property on Kansas avenue or Eleventh street was worth last fall, or any other time, because it is irrelevant; it is not the property in controversy, nor situated in the same manner." (Objection overruled by the court. Defendant duly excepted.) A. "What is the question now?" Q. "What was the property along Kansas avenue, there along Tenth or Twelfth streets, worth last fall?" A. "Not what I paid now?" Q. "No, not of any special piece; but what would you generally regard it worth an acre or as acre property?" (Objected to by defendant, same as last objection made, and for the additional reason that the question does not call for the market value. Objection overruled by the court. Defendant duly excepted.) Q. "Tell us the market value of it last fall, in your opinion." A. "I think about two hundred dollars a foot." By Mr. Hutchings: "We move to strike out that testimony, upon the ground it is irrelevant to any inquiry involved in this case." (Motion overruled by the court. Defendant duly excepted.)

E. W. Anderson was asked the following question: "What was the market value of property along Kansas avenue, at that point, last fall, during October and November, immediately south of the Splitlog tract?" (Objected to by defendant's counsel, because no sufficient foundation has been laid for the question, and is incompetent, irrelevant, and immaterial. Objection overruled by the court. Defendant duly excepted.) A. "It was worth, at the corner of Sixteenth and Kansas avenue, a hundred dollars a foot—is what it sold for." By Mr. Hutchings: "We move to strike that out as irrelevant and immaterial, and not responsive to the question." (Motion overruled by the court. Defendant duly excepted.)

The objection to this evidence is that it does not relate to the land in controversy, which is unoccupied land, but relates to town lots situate upon streets, and surrounded by improvements, and is therefore irrelevant. This objection goes to the competency of the evidence. While there is a want of harmony in the authorities, we think the weight of authority

holds that where expert witnesses are called to testify as to values in damage cases, or where, under the exception to the general rule that none but experts may give opinions, non-expert witnesses, familiar with the subject of the controversy, are permitted to give opinions as to values, such evidence— that is, such opinions as to value—should be confined to the market value of the property in controversy in all cases where witnesses can be obtained who are familiar therewith. In the case at bar, it matters not, however, whether we are confined to such rule, or go further and permit witnesses to give their opinions of the market value of other property of like kind, similarly situated, as under either rule the evidence complained of under the first assignment of error should have been excluded. The witness was not asked to give his opinion of the market value of the land in controversy, nor was his opinion sought in relation to the market value of like property, similarly situated. He was asked, "What was property along Kansas avenue, there along Tenth or Twelfth streets, worth last fall?" This property, thus inquired about, consisted of lots on the most important business street in the city of Armourdale, surrounded by or adjacent to lots with buildings and other improvements thereon, while the land appropriated by the plaintiff was a part of a tract of farming land, in use as such when condemned and taken by the railroad company. It had never been platted into blocks or lots as a part of any city, nor was it adjacent to any land which had been so platted, but was bounded on the north by the Union Pacific railroad; on the west by Twentieth street; on the east by Sixteenth street; and on the south, the side nearest to Kansas avenue, by unplatted lands of Mary Orr and the Kaw Valley T. S. and B. Co. This land, and the lots, the value of which was proved by the witnesses, are entirely dissimilar. They are unlike in location. The lots are on a business street in the city, while the land appropriated is from 600 to 800 feet back of said street, and separated therefrom by two other tracts of land of like character, owned by other persons, neither of which is yet platted as an addition to the city. The

property on Kansas avenue is business lots, while the land in controversy, if platted, would be at least two streets back of said avenue, and would not be available for business lots in a long time, if ever. The value of a lot on the principal business street of a city furnishes no criterion for estimating the value of a lot of like size on another street, even one block away from such business center, and much less for the value of farming land, not yet platted as a part of the city, and cut off from the city by other lands not yet platted. The evidence complained of in this assignment is so palpably erroneous that we do not care to pursue the subject further. In a city like Armourdale, where real-estate agents, and dealers in real estate on their own account, are not scarce, it would seem that no difficulty should be experienced in finding witnesses who could testify as to the value of the property in controversy, and thus keep within the rule.

The plaintiff objected to the following evidence of Thomas Orr: Q. "How many feet are there in a lot?" (Objected to by the defendant as immaterial and irrelevant. Objection overruled by the court. Defendant duly excepted.) A. "Lots in the locality of these corners are generally twenty-two feet five and six inches wide, while inside lots are twenty-five feet front." Q. "About how many lots does that give to the acre?" (Objected to as immaterial and irrelevant. Objection overruled by the court. Defendant duly excepted.) A. "The corner lots would make eleven to the acre, while the twenty-five feet would be ten lots to the acre." Q. "That would be at the rate of $5,000 a lot, then?" (Objected to by the defendant's counsel on grounds last stated. Objection overruled by the court. Defendant duly excepted.) A. "Yes, sir."

In cases like this, where damages are limited to the value of the land appropriated, the proper inquiry is, What was the market value of such land, for any present use, in the condition in which it was immediately prior to its condemnation by the company? Witnesses testifying as to the value of such land may consider any use to which the ground may be pres-

ently put, in forming their opinions as to its value; and its surroundings may be shown to the jury — its nearness to, or distance from, a town, village, or city, or other improvements that tend to affect its value; but the jury are to value the land as a whole, in the condition in which it was when taken. They have nothing to do with its subdivision into lots or blocks. They may consider its location, and the effect its location has upon its value as a whole; but the evidence as to how many lots it would make, and what they would sell for after the subdivision, is wholly improper. If an illustration was wanted to show the impropriety of such evidence, we do not know where we could find a stronger, or more apt one, than the evidence this witness furnishes. The witness is asked the size of lots on Kansas avenue, the value of such lots, and how many such lots an acre would make, and then it drops out that an acre of such lots is worth $55,000 without improvements; that the witness paid at that rate per acre. Such evidence is certainly highly improper. It furnishes no proper measure of value, so far as the land appropriated is concerned, with which alone the jury has to do, and is well calculated to mislead the jury by furnishing a false and fanciful measure of damages. Without going further into this record, for the reasons given in connection with these, the first and third assignments, it is recommended that the judgment of the district court be reversed, and the case remanded for new trial.

By the Court: It is so ordered.

All the Justices concurring.