ADELINE B. CONSTANT, as *Administratrix of the estate of Hiram Constant, deceased,* v. S. LEHMAN *et al.*

1. CONTRACT — *Rescission, How Made.* The rescission of a contract must be made by a restoration to each of the parties thereto of that which has been received under it; and, in order to obtain such rescission, all of the parties interested in the property involved must be brought before the court.

2. FRAUD — *Measure of Damages.* In an action to recover damages for fraudulently inducing the plaintiff to enter into a joint purchase of lands with the defendants, where the fraud charged is that the defendants were part owners in the land and concealed such fact from the plaintiff, the measure of the plaintiff's recovery is the difference between the price paid and the fair market value of the property at the time of the purchase.

3. MARKET VALUE — *Evidence.* To prove such market value, the evidence need not be confined to the very day, but proof of value within a reasonable time before and after the transaction may be received and considered by the jury.

*Error from Harvey District Court.*

THIS action was brought by plaintiff's intestate, Hiram Constant, who died after the trial of the case in the district court, and the cause was thereafter revived and prosecuted in the name of the administratrix. The petition charges the defendants with having induced him and other persons, who resided at Hutchinson, to enter into a joint purchase of two 40-acre tracts of land in the vicinity of Newton by fraud. It appears that one tract, known as the "Briggs 40 acres," lying west of the city of Newton, was purchased from a Miss Briggs, for $16,000. The title to the other tract was in one M. L. Stewart, and was purchased for $12,000. The fraud charged against the defendants consists in the facts that Lehman and Gilbert were in fact half owners in the east 40; that they did not disclose their interest to the Hutchinson parties, and induced them to believe that their only interests in the transaction were as purchasers with the others. Lehman and Gilbert lived at Newton, and it is alleged that they were men of high standing and character, both as to integrity and busi-

ness sagacity; that they represented that they had reliable information from the officers of the Atchison, Topeka & Santa Fé Railroad Company that said company intended to make very large improvements in the city of Newton within the next six months, which would greatly enhance the value of real estate in that vicinity; that plaintiff and the rest of the Hutchinson people relied on the judgment of the defendants as to the value of the property purchased and the future prospects of Newton. It is claimed that the defendants Templar and Moore conspired with Lehman and Gilbert to perpetrate this fraud, and that Moore also had an additional interest in the matter by reason of his holding an option on the west 40 acres for $15,000, for which he had paid $250; that he also concealed this interest in the transaction, and derived a profit of $1,000 therefrom. A syndicate was formed composed of the defendants Lehman, Gilbert, Templar, and seven Hutchinson parties, each of whom contributed $2,800 in cash and notes, and, thereupon, the purchases were made and deeds taken to the defendant Gilbert, as trustee for all the parties interested. Afterward a corporation was formed, to which the lands were transferred, and stock was issued to each for his share in the purchase. Only a small portion of the land was sold, and the proceeds were applied in payment of taxes. The speculation proved a bad one. Plaintiff offers to transfer all his interest in the corporation, and in the lands purchased, to the defendants; asks a rescission of the contract, and a judgment for $2,800, with interest, as his damages. The case was tried before the court and a jury. After the plaintiff had offered all his evidence, the defendants interposed a demurrer thereto, which was sustained by the court. A motion for a new trial was overruled, and the plaintiff brings the case here for review.

*McKinstry & Wise*, and *Bowman & Bucher*, for plaintiff in error:

When the defendants in error induced us to purchase these lands it was their plain duty to inform us of any and all pe-

culiar relations they bore to them. Under the circumstances of this case, anything short of this was fraud of the most deformed kind, such as one professed confidence man would scarcely care to practice on another for fear of injuring his reputation among his brethren. Bigelow, Fraud, p. 342, and case there cited; *West v. Waddill*, 33 Ark. 575; *Yeoman v. Lasley*, 40 Ohio St. 190; *Michoid v. Girard*, 4 How. 503; Story, Eq. Jur., §§ 192, 148; *Culver v. Avery*, 22 Am. Dec. 586; *Mitchell v. Zimmerman*, 51 id. 717; *Stevens v. Matthewson*, 45 Kas. 594; *Ross v. Hobson*, 26 N. E. Rep. 775; *Coles v. Kennedy*, 46 N. W. Rep. 1088; *Miller v. Curtis*, 15 N. Y. 140; *Hawk v. Brownell*, 11 N. E. Rep. 416.

If one induces the sale of land by fraudulently representing that the title to the land carries with it some valuable privilege, then the measure of damage will be the difference between the value of the land conveyed and the price paid by reason of its supposed value, caused by the purchaser thinking it carried the privilege which it had been fraudulently represented to carry. *Monsel v. Colden* 7 Am. Dec. 390. See, also, *Foster v. Taggart*, 54 Wis. 391.

The following authorities all sustain our position as to measure of damages where fraud is proven or admitted, as in our case: *Stiles v. White*, 45 Am. Dec. 218; *Kountz v. Kirkpatrick*, 13 Am. Rep. 687, and note, p. 696. This last case gives rule where actual value of property is sought, when it had been sold on a crazy or irregular market. *Murray v. Jennings*, 19 Am. Rep. 527; *Franklin v. Green*, 2 Allen, 519; *Stuckwell v. Daubert*, 5 Cush. 23; 4 Jac. Fish. Dig. 558; *Fisher v. Miller*, 103 Mass. 503; *Bustend v. Farrington*, 31 N. W. Rep. 360; *Carter v. Binninger*, 33 N. J. Law, 513. A petition is not demurrable because it asks a rescission, and for damages. Our petition does this, and it was upon the theory that we had the right to tender the stock received and recover back the purchase money. 20 N. W. Rep. (Neb.) 220; *Mason v. Bovert*, 1 Denio, 69; *Downer v. Smith*, 76 Am. Dec. 148; *McKee v. Eaton*, 26 Kas. 226.

Joint purchasers occupy a fiduciary relation toward each other. Bigelow, Frauds, pp. 226, 315; *Michoid v. Girard*, 4 How. 503; Field, Corp., pp. 190, 191, 194, note; *King v. Wise*, 43 Cal. 629; *Barry v. Bennett*, 45 id. 80; *Bainter v. Fultz*, 15 Kas. 223.

Where fraud or mistake is shown, an executed contract may be rescinded and purchase money recovered. *Thompson v. Jackson*, 15 Am. Dec. 721; *Babcock v. Case*, 100 id. 684. Defrauded party does not lose his right to rescind because the contract has been partly executed and the parties cannot be fully restored to their former position. See 76 Am. Dec. 148.

*W. E. Brown*, for defendants in error Lehman and Gibert:

The plaintiff could not have maintained this action as an action for a rescission. *Hardy v. National Bank*, 47 Kas. 88.

So that the plaintiff in this case cannot have a rescission of the contract, even if the facts and the nature of the transaction were such that he would be entitled thereto, for the reason that there are not proper parties to this suit to give the court power to decree a rescission. The matter is so complicated that it is impossible for the court to make a rescission.

We contend that the authorities which are cited by the counsel opposing us bear out our own view of this case, and, also, the view which the court below took, and that is, that the measure of damages is the difference between the price paid for the land and its value at the time the purchase was made. If this rule is not adopted, then we are at sea. There is no affirmative proof of fraud in this case. It is not contended that there was any willful and affirmative representation as to the want of interest of Lehman and Gilbert in this property.

Counsel for plaintiff in error contend that there was a conspiracy in regard to this matter, to wit, that Lehman and Gilbert, and two of their own citizens from Hutchinson, Templar and Moore, formed a conspiracy and confederated together for the purpose of cheating and defrauding the other

Hutchinson parties. The evidence and the facts of this case, even taking the plaintiff's side of it (and this is all we have in the record), show that it was impossible that these parties should have contemplated a conspiracy to cheat and defraud anyone.

On the question of the measure of damages, counsel have utterly failed to cite a solitary case which supports any such doctrine or measure of damages as they contend for. The case of *Kountz v. Kirkpatrick*, 72 Pa. St. 376, certainly has no bearing whatever upon the case at bar.

Another case which plaintiff's counsel pretend to get considerable comfort from is the case of *Carter v. Binninger*, 33 N. J. Law, 513. A certain slight remark in the opinion of the court in this Carter case does not justify the conclusion of the counsel for the plaintiff in error, that the court intended to decide any such doctrine as is contended for. The case is clearly an opinion in our favor. The court discusses at length the rule for estimating damages in cases of fraud, and holds that the measure is the difference between the value of what the plaintiff received and what he paid, and cites numerous authorities to support that position.

If plaintiff in error desired a rescission he must have tendered back all that he had received under the contract, and must have made this tender at once after discovering the fraud. *Cobb v. Hatfield*, 46 N. Y. 537. There is no allegation in the petition that he ever made any such tender, or ever offered to rescind, and by bringing this action for damages he elected to keep the land. Having received this land and elected to keep it, he must be charged, in the estimation of damages, with its value at the time he took the same. He cannot elect to hold the land, and, during several years that the suit is pending before it is tried, have charge and control thereof, being at liberty to sell the same or do what he pleased with it, and at the same time charge up to the defendant as damages the whole decrease in the value of the land during that time.

*Whiteside & Gleason,* for defendants in error Templar and Moore:

The statement of facts is really enough to show that the attempt of rescission is wholly unauthorized and not maintainable.

The court, over the exception of defendants, permitted plaintiff to introduce evidence under the petition, on the ground evidently that the petition stated facts sufficient to maintain an action at law, and we demurred to the evidence. We maintain that the separate demurrers of Moore and Templar to the evidence were rightfully sustained by the court on two grounds: First, that the plaintiff proved no damages; second, the evidence introduced by plaintiff was demurrable at the hands of Moore and Templar, for the reason that nothing inculpatory was proven against either one of them. So far as Moore is concerned, there can absolutely be no argument. The record failed to disclose that he ever made a statement to anyone about either the value of the land or the ownership of the property, or that he was ever asked to do so.

There is not a *scintilla* of evidence that Templar knew that Lehman and Gilbert had any interest in the Stewart tract of land, or that he told an untruth to anyone. There is no reason to believe that if Lehman and Stewart had any interest they would have gratuitously revealed the fact to Templar, any more than to the other parties. The court declined to admit the depositions against Moore and Templar, but admitted them as against Lehman and Gilbert.

The questions involved in this case are so elemental that we shall cite but few authorities, and they are as follows: On the question of fraud, see *Humphrey v. Meriam,* 20 N. W. Rep. 138; *Lavassar v. Washburn,* 50 Wis. 200; *Moore v. McIntosh,* 6 Kas. 44; *Wilkin v. Tharp,* 55 Iowa, 609. On the question of rescission, see *Jeffers v. Forbes,* 28 Kas. 181; *Van Vechten v. Smith,* 59 Iowa, 173. On the measure of damage,

see *Old Colony Rld. Co. v. Evans,* 6 Gray, 25; *Van Epps v. Harrison,* 5 Hill, 63; 3 Suth. Dam. 590, and authorities cited in note 1.

The opinion of the court was delivered by

ALLEN, J.: We have only to consider the case made by the evidence introduced by the plaintiff, and determine therefrom whether there was anything to go to the jury. It is conceded that it was a fraud for Lehman and Gilbert to enter into a joint purchase of this land with the Hutchinson parties, when they were interested as sellers, without disclosing that interest. The controversy in the case is as to the right of the original plaintiff in this action to rescind; and if that be determined adversely to him, then as to the measure of his damages. To rescind is to revoke, to annul what has already been done, and implies that the parties shall be again placed in the same condition that they were in before the transaction. It never implies the making of a new contract for the parties by the court. The parties interested in this transaction purchased two tracts of land. In the east tract, Lehman and Gilbert were interested as sellers as well as purchasers. In the west tract, they were interested only as buyers. A rescission of the contract would require not merely a transfer of the interest of the plaintiff in the corporation to the defendants, nor alone the transfer by the corporation back to Stewart of the land in which Lehman and Gilbert held a half interest, but would also require a transfer of the west 40 acres of the corporation back to Miss Briggs. Now, it is not contended that any fraud was perpetrated either by Stewart or Miss Briggs. They are not parties to this action; and if they were, no facts are disclosed, either by the pleadings or the testimony, which would authorize a rescission as against them. If a rescission were warranted by the facts of the case, the necessary parties are not before the court. The corporation in which the title to the land is vested is not even made a party. The court clearly has no power to compel the defendants to purchase the plaintiff's

1. Contract—rescission, how made.

stock in the corporation. (*Hardy v. National Bank*, 46 Kas. 88; *Neal v. Reynolds*, 38 id. 432; *Jeffers v. Forbes*, 28 id. 174, and cases there cited.)

Was there any competent evidence to go to the jury on the question of damages? What is the measure of plaintiff's recovery? Plaintiff contends that she is entitled to recover all that was lost by reason of her intestate's having entered into this transaction, and that that loss is measured by the difference between the amount of money paid and the value of the property obtained through the fraudulent purchase, measured by its value at the time of the trial; that the rule for the ascertainment of damages occasioned by fraud is different from that in an action on a covenant; that the plaintiff is entitled to have her whole loss made good; and that, in order to do so, she must be paid back all the money her intestate parted with, diminished only by the present value of the property obtained through the transaction. On the other hand, the defendants contend that the plaintiff's damages, if any be awarded her, must be measured as of the time of the transaction; that plaintiff's intestate had a right, at any time after the purchase, to dispose of his interest in the property; that if it was worth, or could be sold on the market for, as much as he paid for it, and he saw fit to continue to hold it in expectation of an increase in value, it is his own speculation from that time on, and that the defendant is in nowise responsible for an adverse turn in the real-estate market.

The trial court seems to have regarded the testimony introduced as wholly insufficient to challenge the consideration of the jury. The land was purchased in May, 1887. There is evidence tending to show that an inflation in the market value of real estate in the vicinity of Newton began about February, 1887; that just prior to the boom this land was worth from $50 to $75 an acre; that thereafter it increased in price very rapidly; that the inflation of prices lasted about six months, after which there was a shrinkage. It appears that in January, 1887, the east 40 was purchased by Gilbert

and others for $4,000. Defendant Gilbert testified that there had been a general depreciation in property ever since the 1st of August, 1887, and that the present value of property is lower than before the commencement of the boom. The plaintiff offered to prove the present value as a measure of damages, and this evidence was rejected. Plaintiff's counsel contend that prices of real estate at the time of the purchase were inflated, fictitious, and temporary, and, for that reason, that they did not constitute a safe guide for the measurement of damages, and cite, in support of their contention, *Carter v. Binninger*, 33 N. J. Law, 513; *Kountz v. Kirkpatrick*, 13 Am. Rep. 687, and some other cases. The facts in these cases were exceptional in character, and the rule laid down in them is confessedly a departure from the main current of the authorities. In Sedgwick on the Measure of Damages, § 1027, it is said that, in actions for fraud in the sale of land, "it has usually been held that the measure of damages is the difference in value between the land as it would have been if as represented and as it actually was. Such difference in value must be estimated at the time of the sale." And Sutherland on the Measure of Damages (§ 1171) is to the same effect. So, also, *Gaulden v. Shehee*, 24 Ga. 438; *Brisbane v. Pomeroy*, 13 Daly, 358; *Marvin v. Prentice*, 94 N. Y. 295; *Van Epps v. Harrison*, 5 Hill, 63.

We think the true measure of damages in this case is the difference between the price actually paid and the fair market value at the time of the purchase. The only fraud charged against the defendants was the concealment of their interest in a portion of the property purchased. There is no claim of misrepresentation as to the quality or location of the land. The only prejudicial influence which the fraud of the defendants could have exerted was upon the plaintiff's judgment as to the present and prospective prices, and if the defendants but induced the plaintiff to purchase property at what it was fairly worth at the time and could have been sold for, the fraud is certainly not of a very aggravating character. The plaintiff and his asso-

2. Fraud—measure of damages.

ciates went into a speculation. They bought at a very high price, perhaps, but they bought in anticipation of receiving a still higher one. If it were shown that market values of real estate in the vicinity of Newton were the fictitious creations of defendants, either alone or acting in concert with others, possibly a different question might be presented; but, so far as the record in this case discloses, all the parties to this action were alike tinged with the prevailing madness of the time. All were speculating. All took chances on the fluctuations of the market. The court appears to have held the view that the plaintiff must prove the market value of the land at the very time of the purchase, and that evidence as to the value shortly before and shorty after the transaction is not worthy of any consideration whatever. In this we think 3. Market value— the court erred. Values of real estate can sel-evidence. dom be fixed at the very place and on the very day of a given transaction. The real-estate market is quite unlike the market for those articles of daily use which are constantly bought and sold in the market, are precisely alike in every essential particular, and constantly changing hands between buyer and seller. No two pieces of real property are precisely alike, and sales, except under conditions of speculation and excitement, in any given community, are usually made only at considerable intervals of time. We think the evidence shows the value of this land about January preceding the purchase. It shows that there was an increase in market value thereafter, and then that it steadily fell, until it was lower than before the inflation. Now, while the rights of these parties are to be measured by the condition of the market at the time of the transaction, and while evidence of values at that very time would be better than that in fact introduced by the plaintiff, we think there is some evidence in the case tending to show that the price paid was more than the value of the land at the time of the transaction, and that the court erred in taking the case away from the jury.

It is contended, on behalf of the defendants Templar and Moore, who appear by separate counsel, that whatever conclu-

sion may be reached by the court as to the liability of Lehman and Gilbert, the demurrer was rightly sustained as to them. The evidence tends to show that Templar and Moore were active in bringing about the purchase of the property. It appears that Gilbert afterward took Templar's interest off his hands, and that Moore realized a profit of $1,000 from the sale of the Briggs 40. The defendants are all charged with conspiracy to defraud, and, under such a charge, the range of inquiry is necessarily wide, and the force to be given to particular circumstances mainly a question for the determination of the jury. Without expressing an opinion as to the weight of the testimony, and inasmuch as the case must be retried, we think there was some evidence against all of the defendants.

All the Justices concurring.