No. 42,531

Vic Regnier Builders, Inc., *Appellee,* v. Linwood School District
No. 1, *Appellant.*

(369 P. 2d 316)

Opinion filed March 3, 1962.

*Donald C. Amrein,* of Mission, argued the cause, and *James H. Bradley,* of
Olathe, was with him on the briefs for appellant.

*Robert P. Anderson,* of Overland Park, argued the cause, and *Lyndus A.
Henry,* of Overland Park, was with him on the briefs for appellee.

The opinion of the court was delivered by

Fatzer, J.: On August 14, 1959, the condemnor, Linwood School
District No. 1, commenced this proceeding to acquire three acres
from a 15.75-acre tract for public school purposes. Appraisers were
appointed who fixed the value of the land taken at $10,500 and found
no damage to the land remaining. The landowner, Vic Regnier
Builders, Inc., appealed to the district court from the award of the
appraisers. The case was tried by a jury and resulted in a verdict
for the landowner of $21,000 for the land taken and $6,500 damage
to the land remaining. September 4, 1959, was stipulated as the
date of the taking. The condemnor's motion for a new trial was
overruled, and this appeal followed.

The 15.75-acre tract in question is located at the southeast corner
of the intersection of 95th Street and Mission Road, Overland Park,
Kansas. 95th Street runs east and west and Mission Road runs north
and south. The three acres acquired lie adjacent to the Marsha
Bagby Elementary School. At the time of the condemnation and
of the trial the entire 15.75-acre tract was zoned for residential pur-
poses, however, Ranch Mart, a large shopping center, is located
across 95th Street at the northeast corner of the intersection and

there was expert testimony that the tract's highest and best use was for commercial purposes and that it was probable the property would be rezoned for that use within three to five years.

The condemnor first contends the landowner exceeded the reasonable scope of cross-examination by inquiring of its expert witnesses their knowledge of a sale of a tract of land about which nothing appeared of record in the office of the register of deeds. The tract inquired about involved the sale of a one-third-acre tract across the street from the condemned tract to the General Service Administration of the federal government for the location of the Leawood post office. The sale was made in June of 1960, nine months after the date of the taking. Mr. Bliss, an expert witness for the condemnor, stated that he searched the records of the register of deeds but found nothing, and made no further inquiry. He admitted on cross-examination that he had heard of the sale, stating the superintendent of the school district told him about it.

The condemnor's first contention relates to its second contention that it was error to cross-examine its expert witnesses where the form of the question concerning other sales of real estate in the vicinity of the land taken included the price and other details. It is contended that counsel for the landowner phrased the questions in an improper manner, always asking each expert witness if he knew about the sale of a specific tract for a certain price per acre between A and B, rather than to first inquire whether he was acquainted with the fact of such a sale leaving out the size of the tract and the selling price. It is argued that since a price and acreage was stated in the question and was before the jury, all the witness could do was answer either yes or no, and that in any event, it was immaterial to the landowner how the witness answered since counsel was trying to pound home, sale by sale, all the favorable data he could. It is further argued that if the witness answered "no," the information was not in the record as sworn testimony, and that even if it were not proper evidence, the price or value and acreage was still in the minds of the jury and that to permit such cross-examination was an abuse of privilege by the district court and permitted indirectly what could not be done directly; that is, it permitted the establishment of value of the land taken by specific or exceptional sales of property in the neighborhood.

The condemnor's third contention pertains to a requested instruction which was refused by the district court, and, in turn, relates to its first and second contentions. That instruction would have

advised the jury that the cross-examination of expert witnesses as to other sales of real estate was not permitted to establish market value of the tract taken, because market values are not determined from some specific or exceptional sale in the neighborhood, and that reference to such sales and the price thereof was only permitted on cross-examination to test the credibility and knowledge or lack of knowledge of the particular witness with respect thereto.

In condemnation proceedings the owner is to be given by way of compensation the fair market value of the land taken plus the diminution of value of that remaining, based upon a consideration of all the capabilities of the property for its best and most advantageous use as it was actually situated at the time of the taking. The owner is entitled to show the fair market value of his land for every purpose to which it is adapted. The fact that it has been used for one purpose only does not prevent him from showing its availability for other appropriate uses and its value for such uses, but the uses which may be considered must be so reasonably probable as to have an effect on the present market value of the land. (*Hoy v. Kansas Turnpike Authority*, 184 Kan. 70, 78, 80, 334 P. 2d 315; *Mai v. City of Garden City*, 177 Kan. 179, 182, 277 P. 2d 636; *Cline v. Kansas Gas & Electric Company*, 182 Kan. 155, 318 P. 2d 1000.). The testimony of expert witnesses is weighed by the jury under proper instructions by the court the same as the testimony of other witnesses. The means of testing the competency of expert witnesses in condemnation proceedings is by cross-examination. Only by permitting their cross-examination to the fullest extent can a jury be in a position to determine the probative value of their testimony. Hence, it has long been recognized that expert witnesses in condemnation cases can be cross-examined concerning other transactions and as to sales of other properties for the purpose of testing their credibility, knowledge and competency. (*Railway Co. v. Weidenmann*, 77 Kan. 300, 94 Pac. 146; *Bourgeois v. State Highway Commission*, 179 Kan. 30, 292 P. 2d 683; *Cline v. Kansas Gas & Electric Company*, supra.) Great latitude is necessarily indulged in order that the intelligence of a witness, his power of discernment and his capacity to form a correct judgment may be submitted to the jury so it may have an opportunity to determine the value of his testimony. (*Bourgeois v. State Highway Commission*, supra.) Generally speaking, whether such evidence should be admitted in any particular case is a matter resting within the discretion of the

court under the circumstances presented (*Railway Co. v. Weidenmann,* supra), but the discretion of the court is not absolute. (*K. C. & T. Rly. Co. v. Splitlog,* 45 Kan. 68, 25 Pac. 202.)

Evidence on an issue of market value of real estate, in order to be competent, must relate to the time as of which the value of the property is to be determined, in this case September 4, 1959. To prove such market value, the evidence need not be confined to the very day of the taking but proof of value within a reasonable time before or after the date of the taking may be received and considered by the jury. (*Constant v. Lehman,* 52 Kan. 227, 34 Pac. 745.) In condemnation proceedings the value of real estate can seldom be fixed at the very place and on the very date of the taking. Unlike the value of articles of daily use constantly bought and sold in the market, sales of real estate in any given community are usually made only at considerable intervals of time and it is proper to prove value at a time before or after the date of the taking, that it may reasonably throw light upon the value at the time of the taking.

While we do not approve of the form of the questions asked of the condemnor's expert witnesses nor feel that the unrecorded sale was proper to inquire about, we cannot say that such error was so prejudicial as to require a reversal of the judgment. Neither can we say that, under the facts and circumstances presented, it was improper to inquire about sales in the vicinity made subsequent to the date of the taking since the witnesses, if they knew of the sales, were permitted to explain whether the land sold was similar, including conditions, character and location, to the land taken. Also, we think the district court could reasonably have given the requested instruction, and should have done so, in view of the various objections to the manner of the cross-examination of the condemnor's expert witnesses, but, again, an examination of the record does not reflect that the error was of such character as to warrant a reversal of the judgment.

Complaint is also made that the district court erred in giving instruction No. 8. It is claimed the instruction placed no direct limitation as to when a possible rezoning of the property might take place. We do not believe the instruction had that effect. The jury was advised if it found that the best adaptable use to which the land could have been put at the time of the condemnation was a use other than that for which it was zoned at the time and

that there was a reasonable probability on September 4, 1959, of its being later rezoned to permit such use, then it might consider such fact in determining fair market value of the property insofar as that use tended to affect the immediate value of the property. In view of the landowner's expert testimony we cannot say the instruction was prejudicial or erroneous. Furthermore, the record indicates the condemnor did not object to the giving of the instruction in the form ultimately agreed upon by all parties and as finally submitted to the jury.

Lastly it is contended the verdict was excessive. The parties each presented three expert witnesses, and Regnier testified for the landowner. The testimony of those witnesses ranged from $10,500 for the value of the land taken with no damage to the remainder, to $60,000 for the value of the land taken with damage to the remainder of $10,000 taking into consideration that the most advantageous use for the property taken and that remaining was for commercial development and that it was reasonably probable the property would be rezoned for commercial use within three to five years. The property is a valuable corner location in the rapidly expanding and highly improved area in northeast Johnson County. The verdict was well within the range of the evidence and was amply supported by the testimony. The case was tried by able counsel on each side and the experts were well qualified. There was an abundance of evidence of the reasonable market value of the property, and we cannot say that the verdict was so excessive as to require a reversal of the judgment.

The judgment is affirmed.