No. 93,286

IN THE MATTER OF THE ACQUISITION OF PROPERTY BY
EMINENT DOMAIN

THE BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY,
KANSAS, *Condemnor/Appellant,* v. THOMAS H. SMITH and
MARGIE E. SMITH, *et al., Landowners/Appellees.*

(123 P.3d 1271)

Opinion
filed December 9, 2005.

*Robert A. Ford,* assistant county counselor, of Olathe, argued the cause and was
on the briefs for appellant.

*Marvin E. Rainey,* of Rainey and Rainey, of Overland Park, argued the cause,
and *M. Ellis Rainey, II,* of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

NUSS, J.: This interlocutory appeal involves property valuation
in an eminent domain proceeding. In 2001, Johnson County
(county) took the Smiths' property which is not only within the city
limits of Overland Park (city) but is also within 1 mile of the John-
son County Executive Airport (airport).

The county believed that the property's zoning classification was
an important factor in determining value. It therefore filed a mo-
tion in limine asking the district court to find that the highest and
best use of the property on the date of the taking was low-density
residential and to prevent the Smiths from presenting evidence
that the highest and best use of the property was high-density res-
idential.

The district court recognized that in 1989 the city had taken
action to rezone from A-J (agricultural, *i.e.,* allowing low-density
residential) to R-1 (single-family, *i.e.,* high-density residential). It
ruled, however, that because the county had not approved the re-

zoning of property within 1 mile of the airport, the property had retained its county A-J zoning classification since annexed by the city in 1985. The district court later vacated its ruling, concluding that the zoning had changed to R-1 in 1989.

The county received permission from the district court to request an interlocutory appeal, and pursuant to K.S.A. 2004 Supp. 60-2102(c), the case was forwarded to the Court of Appeals which granted interlocutory status. We transferred the case, and our jurisdiction is pursuant to K.S.A. 20-3017.

The district court articulated the issue and its rationale for allowing the pursuit of an interlocutory appeal as follows:

"[T]he Court's ruling on the zoning classification of the property at the time of the taking is a controlling question of law on which there is substantial grounds for a difference of opinion. The Court's ruling that property was at the time of the taking zoned R-1 is a conclusion of law which required consideration of K.S.A. 12-741 *et seq.* and K.S.A. 3-301 *et seq. Because the zoning classification of the property will largely determine the just compensation, the only issue in this case, the Court finds and concludes that an immediate appeal of this Order of the Court determining zoning classification may materially advance the ultimate termination of this litigation.*" (Emphasis added.)

Upon review, we conclude that the questions of (1) whether to determine the zoning classification of the taken property and, if so, (2) the actual determination of the zoning classification itself are for the jury, not an appellate court. Accordingly, we reverse and remand with directions.

## FACTS

The Smiths were the owners of the 80-acre property (the north 80 acres of the Southwest Quarter of Section 15, Township 14, Range 24) which is the subject of this appeal. At the time of the property's annexation by the city in 1985, it carried a zoning classification by the county as A-J (agricultural). The property lies within 1 mile of the airport.

In 1989, the then agent for the property, William Shafer, took steps to allow development of a single-family subdivision. Among other things, he filed an application with the city to rezone 160 acres (the entire Southwest Quarter of Section 15), including the

subject property, from A-J (agricultural) to R-1 (single-family residential).

On March 29, 1989, Shafer sent a letter to the county, among others, addressed "Dear Property Owner" to notify the county of a public hearing to be held on April 10 to consider Rezoning Application No. 89-11, *i.e.*, to rezone the property from A-J to R-1 for construction of single-family homes. On April 18, attorney Neil Shortlidge for the city advised City Attorney Robert Watson that although the land lay within 1 mile of the airport, rezoning would not require county approval under K.S.A. 3-307e because the rezoning would not be a change in existing *city* zoning: existing zoning was the county's.

On May 15, 1989, the city council conducted a hearing on Shafer's application to rezone. A representative of the Johnson County Airport Commission (airport commission) was present and stated that it was not opposed to Shafer's application. The city council then voted to approve application No. 89-11 to rezone the property to R-1 and adopted the accompanying Rezoning Ordinance No. Z-1946. This action was in turn approved by the mayor and approved as to form by Watson as city attorney. The Johnson County Board of County Commissioners did not formally approve this rezoning action, but neither did it appeal the decision.

In June 1991, the airport commission drafted a "Comprehensive Compatibility Plan." Among other things, the plan identified the subject property as R-1, single-family residential with 8,000 square foot minimum lot size. It also identified this zoning as inconsistent with the airport's future land use, *e.g.*, Airport Rural Residential with 2-acre minimum lot size.

In 1994, the county adopted zoning and subdivision regulations and again confirmed the "base zoning" of the subject property "on the date of the adoption of these regulations" as R-1. That same year the City of Olathe approved a site plan within 1 mile of the airport based upon its own recent rezoning to R-1 of property within its city limits. Later that year the county successfully sued the City of Olathe in Johnson District Court, arguing that according to K.S.A. 3-307e Olathe had failed to obtain county approval for the rezoning near the airport, even though the county had not sued

the City of Overland Park when that city had made a similar re-
zoning of the subject property in 1989.

The Smiths acquired the property in 1998, and on June 28, 1999,
they filed an application with the City of Overland Park for prelim-
inary plat approval of a single-family housing subdivision. Assistant
City Attorney J. Bart Budetti advised the staff of the city's planning
department that the city's 1989 Rezoning Ordinance No. Z-1946
had not been approved by the county. Furthermore, he advised
that until such county approval of the rezoning had occurred, the
city could not review or approve the preliminary plat. Instead of
appealing, the Smiths withdrew their application on July 20.

Budetti later explained in a 2004 affidavit that the city had not
obtained county approval "as required by statute" because the
city's planning department had not been aware of this requirement.
According to him, the city had simply and erroneously changed its
zoning map in 1989 to reflect the zoning change from A-J to R-1.
The City Planning Director, Roger Peterson, also explained in an
2002 affidavit that the 1989 rezoning from A-J to R-1 was ineffec-
tive because it had not been approved by the county as required
by K.S.A. 3-307e.

Approximately 8 months after the Smiths withdrew their appli-
cation, on March 8, 2000, their attorney sent a letter to the county
planning office which stated in relevant part:

"Our firm represents Tom Smith, the owner of property located at 167th &
Pflumm. Because the property is located within one mile of the airport, the owner
is hereby requesting that the County review the matter of the existing zoning of
the property and development of the area according to that zoning.

"Therefore, the City of Overland Park has provided a full copy of its file (doc-
uments enclosed) regarding the 1989 rezoning of the property to single-family
residential to facilitate County's review of this matter."

Three months later, on June 8, 2000, apparently at the Smiths'
attorney's request for county approval of the city's 1989 rezoning
of the 160 acres, the county considered Rezoning Application No.
REZ-89-11 which had been adopted by the city in 1989. The
county then passed two resolutions.

First, with Resolution No. 053-00, the county denied the zoning
change from A-J to R-1 for the south 414 ft. of the Southwest

Quarter of Section 15 (25 acres). Among its cited reasons were "[t]he proposed development does not comply with the adopted plans for the area" and "safety concerns about residential development in an area within the flight path of the airport and also noise concerns about residential development near the airport." Second, with Resolution No. 055-00, the county declared its intent to acquire the north half of the Southwest Quarter of Section 15 (the Smiths' 80 acres). The Smiths never appealed these county decisions.

Once the county disapproved Smiths' request, Assistant City Attorney Budetti advised his planning staff to remove the erroneous R-1 designation on the City's Official Zoning map. According to him, Smiths' property maintains its county A-J zoning on the city map.

Less than a year later, on March 20, 2001, the county began an eminent domain proceeding to acquire the subject property. On May 21 of that year, the Smiths appealed from the report of the court-appointed appraisers and requested a jury trial on damages. The county took the property the next month, on June 6, approximately 1 year after the county disapproved the Smiths' rezoning request and declared its intention to take the property.

On January 9, 2003, the county filed a motion in limine in the eminent domain appeal asking the district court to prevent the Smiths from presenting evidence that the highest and best use of the property was high-density residential. The county asked that the court instead find the highest and best use of the property was limited to low-density residential based on the county's A-J zoning at the time of taking: June 6, 2001.

On November 13, 2003, the court granted the county's motion, concluding that the property retained its A-J zoning classification at the time of the taking. Specifically, the court held that the 1989 rezoning to R-1 by the city did not take effect because it had not been approved by the county as required by K.S.A. 3-307e. The court stated:

"There can be little question that the purpose of K.S.A. 3-307e is to allow the County to 'veto' any city zoning action within one mile of a county airport if the Board determines that the zoning is not in the best interests of the airport oper-

ations. Any decision by this Court must take into consideration the purpose of the statute. Allowing the Property to be rezoned without the express approval of the Board of County Commissioners would be contrary to the expressed legislative intent. Any doubts in the applicability of the statute must be weighed in favor of the County. Under these circumstances, the Court concludes that the zoning of the Landowners' property remains 'A-J.' "

The district court also held that to rule otherwise would allow the Smiths an improper collateral attack in the eminent domain proceeding on the validity of the county's June 2000 rejection of the Smiths' request for rezoning to R-1. It therefore concluded that it had no jurisdiction to hear an appeal of the county's rezoning rejection.

On April 6, 2004, the Smiths filed a motion to vacate and set aside the November 2003 order. On September 18, 2004, the court granted the motion and vacated its earlier order. The court held that its earlier order allowed the county to make an improper collateral attack in the eminent domain proceeding on the validity of the city's 1989 rezoning of the property from A-J to R-1. In effect, it held that if the county had wished to challenge the 1989 rezoning action, it had been required to appeal the rezoning decision within 30 days. See K.S.A. 12-712 (Ensley 1982) (repealed 1991); K.S.A. 12-760. In so holding, the court recognized the validity of the city's 1989 rezoning, and concluded that the zoning had changed to R-1.

The court also determined, and the county and the Smiths agreed, that the highest and best use of the property at the time of the taking was dependent upon the zoning of property at that time; "therefore, the determination of the zoning classification is largely determinative of the market value of the property at the time of the taking, which is the only issue to be decided in this condemnation appeal." It then approved the request of the county to proceed with an interlocutory appeal so an appellate court could determine the property's zoning classification at the date of taking.

## ANALYSIS

Issue: *Should an appellate court determine a property's zoning classification on the date of taking if the classification will largely determine the amount of just compensation?*

*The parties' legal arguments*

The parties make numerous arguments to support their conflicting positions about the property's actual zoning classification at the time of the taking. For example, the Smiths argue that the city's 1989 zoning change was essentially approved by the county through substantial compliance with statutory requirements, *i.e.*, K.S.A. 3-307e. Among other things, they also argue their reliance and the county's acquiescence or estoppel. They point to attorney Shortlidge's opinion for the city in 1989 that county approval was not required for rezoning; to the airport commission's lack of opposition to the application for rezoning in 1989; to the 1991 Comprehensive Compatibility Plan which appeared to confirm the city's 1989 rezoning to R-1; to the city's zoning map indicating R-1 zoning for the property; and to the county's failure to ever sue the city for its zoning change, when the county had promptly sued the City of Olathe for similar actions in 1994.

The county argues that the Smiths are improperly transforming this eminent domain proceeding into a zoning appeal over which this court has no jurisdiction. It alleges that the only issue is whether a well-informed buyer would consider the land to be already zoned R-1 on the date of the 2001 taking, in light of the contrary actions by the city, the county, and the Smiths themselves that in effect recognized the zoning as A-J. These actions would include Assistant City Attorney Budetti's 1999 statements that the change to R-1 on the city zoning map had been made mistakenly and that county approval of city zoning changes was required before plat approval could be considered.

Included in the parties' arguments are allegations against each other of improper collateral attacks.

The Smiths argue that the city's 1989 decision to change the zoning from A-J to R-1 was not appealed by the county per K.S.A. 12-760, or its predecessor, K.S.A. 12-712 (Ensley 1982) (repealed 1991). Those statutes require an appeal of a planning or zoning decision to be filed within 30 days. They cite *St. John v. City of Salina,* 9 Kan. App. 2d 636, 684 P.2d 464, *rev. denied* 236 Kan. 876 (1984) for the proposition that the appeal of zoning decisions

can include the "lawfulness" or "validity of enactment." Accordingly, they claim that the county cannot collaterally attack that city decision at this late date.

Among other things, the county argues that Assistant City Attorney Budetti's June 1999 refusal to review or approve the Smiths' property plat was not appealed by the Smiths as an "administrative official's decision or determination" to the Board of Zoning Appeals per K.S.A. 12-759(d) and then to the district court per K.S.A. 12-759(f). K.S.A. 12-759(d) requires an appeal be taken within a reasonable time as provided by the rules of the Board; K.S.A. 12-759(f) requires an appeal to be taken within 30 days of the final Board decision. Instead, the Smiths withdrew their application. Accordingly, the county claims that the Smiths cannot collaterally attack that city official's decision and determination at this late date.

Similarly, the county argues that its June 8, 2000, decision to deny the Smiths' rezoning request was not appealed by the Smiths per K.S.A. 19-223 or K.S.A. 3-709. The first statute requires an appeal to the district court of any decision of a board of county commissioners to be filed within 30 days, while the latter specifically requires an appeal to the district court within 30 days of decisions made under the provisions for airport zoning regulations. Accordingly, the county claims that the Smiths cannot collaterally attack its 2000 decision now.

The county further argues that it need not have appealed the 1989 rezoning decision by the city under K.S.A. 12-760 because K.S.A. 3-307e trumps the other statute by placing the burden on the city to then submit its rezoning decision to the county for approval. K.S.A. 3-307e provides:

"The airport commission shall act as an airport zoning commission for the county and as such shall make recommendations and serve in the same capacity as an airport zoning commission provided for in subsection (2) of K.S.A. 3-705. Said commission shall make such recommendations concerning type and boundary of zones and regulations to be adopted for public airports and all property within (1) mile thereof. The board of county commissioners shall act on such recommendations and may zone such airports and the surrounding areas within (1) mile except where such areas have already been zoned by city action. In such cases, city zoned areas shall keep such city zoning control *except that any changes*

*in existing city zoning must have the approval of the board of county commissioners.* All airport zoning regulations adopted as provided for herein shall be administered by the airport commission, as directed by the board of county commissioners. The county commissioners shall exercise directly all the zoning authority granted by this act in the event an airport commission is not appointed or functioning." (Emphasis added.)

The county argues that because no county approval was sought, much less received, the 1989 city rezoning was invalid.

The Smiths respond by arguing, among other things, that the county had no airport zoning regulations until 1994. Consequently, the county had no authority to approve or disapprove any city request for rezoning in 1989, and the city zoning changes are therefore valid.

We need not analyze these and other detailed arguments made by the parties. As explained below, we conclude these are matters for the jury to consider when it deliberates on the issue of the property's value at the time of taking, including the likely zoning classification of the property.

## Discussion

The major issue in a condemnation action is the condemned property's fair market value. *City of Wichita v. Eisenring,* 269 Kan. 767, 773, 7 P.3d 1248 (2000) (citing 5 Nichols on Eminent Domain § 18.05[1][3d ed. 1997]). "Fair market value" is in turn defined as "the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion." K.S.A. 26-513(e).

K.S.A. 26-513(d) provides a "nonexclusive list" of 14 factors to ascertain the amount of compensation and damage. "Thus, any competent evidence bearing upon market value generally is admissible including those factors that a hypothetical buyer and seller would consider in setting a purchase price for the property." 269 Kan. at 773 (citing 5 Nichols on Eminent Domain § 18.05[1].

The district court and the parties ask that we determine the property's zoning classification because that "will largely determine the just compensation, the only issue in this case." We begin by

observing that zoning classification certainly is not dispositive of value:

"[I]n determining, for condemnation purposes, the most profitable use to which land can reasonably be put in the reasonably near future, the existing zoning restrictions or other restrictions should be considered, *but they are not determinative.*" (Emphasis added.) 29A C.J.S., Eminent Domain § 148(d).

K.S.A. 26-513(d)(1) is in agreement: "The most advantageous use to which the property is reasonably adaptable" is but one of the 14 nonexclusive factors of compensation.

PIK Civ. 3d 131.05 addresses this adaptability factor and states in relevant part:

"In determining fair market value, you should consider *all of the possible uses to which the property could have been put,* including the best and most advantageous use *to which the property was reasonably adaptable,* but your considerations must not be speculative, conjectural, or remote. *The uses which may be considered must have been so reasonably probable as to have had an effect on the fair market value of the property at the time of the taking.*" (Emphasis added.)

Determining the uses to which the property was reasonably adaptable includes consideration of a reasonable probability of zoning changes. 5 Nichols on Eminent Domain, § 18.05[3], p. 18-32, provides in relevant part:

"Admissibility of a proposed use requires a showing that the property is both physically adaptable for that use and that there is a demand for such use in the reasonably near future. *Even if the asserted use is prohibited by zoning or other land use designations or requires the issuance of governmental permits, evidence of such use is admissible upon a showing that it is reasonably probable that the zoning or other designations would be changed or that permits would be issued.*" (Emphasis added.)

We next observe that in Kansas the issue of rezoning probability as a factor in determining the fair market value of the taken property is a jury question. PIK Civ. 3d 131.06 provides:

"If you find that the best use to which the land could have been put at the time of the taking was a use other than that for which it was zoned at the time, *and that there was a reasonable probability of its being later rezoned to permit such use,* then you may consider such use in determining the market values." (Emphasis added.)

*Regnier Builders, Inc., v. Linwood School District No. 1*, 189 Kan. 360, 369 P.2d 316 (1962), is of guidance. There, the Linwood School District filed suit to acquire 3 acres from a 15.75-acre tract for public school purposes. After the court-appointed appraisers fixed the value of the 3 acres at $10,500 and found no damage to the 12.75 acres remaining, the landowner, Vic Regnier Builders, Inc., appealed to the district court. The jury heard testimony from 3 expert witnesses per party and from the landowner. The jury found the 3 taken acres were worth $21,000 and the remaining 12.75 acres were damaged in the amount of $6,500.

The 15.75-acre tract was located at the southeast corner of the intersection of 95th Street and Mission Road in Overland Park. Although the tract was zoned residential, evidence established that Ranch Mart, a large shopping center, was located at the northeast corner of the intersection. Consequently, "there was [landowner's] expert testimony that the tract's highest and best use was for commercial purposes and *that it was probable the property would be rezoned for that use within three to five years.*" (Emphasis added.) 189 Kan. 361. According to the landowner's expert witness, these considerations supported appraising the value of the 3 acres at $60,000 and the damage to the remainder at $10,000.

The court initially observed:

"The owner is entitled to show the fair market value of . . . land for every purpose to which it is adapted. The fact that it has been used for one purpose only does not prevent [the landowner] from showing its availability for other appropriate purposes and its value for such uses, but the uses which may be considered must be so *reasonably probable* as to have an effect on the present market value of the land. [Citations omitted.]" (Emphasis added.) 189 Kan. at 362.

The court also denied the school district's challenge to a jury instruction (not set forth in the opinion), stating:

"The jury was advised if it found that the best adaptable use to which the land could have been put at the time of the condemnation was a use other than that for which it was zoned at the time and *that there was a reasonable probability on September 4, 1959, [date of the taking] of its being later rezoned to permit such use, then it might consider such fact in determining fair market value of the property* insofar as that use tended to affect the immediate value of the property. In view of the landowner's expert['s] testimony we cannot say the instruction was prejudicial or erroneous." (Emphasis added.) 189 Kan. at 363-64.

Testimony apparently ranged from one expert witness' $10,500 residential value for the 3 taken acres with no damage to the remaining 12.75 acres, to the "probable zoning change" expert witness' $60,000 commercial value for the 3 taken acres with damage to the remainder of $10,000. That range, coupled with a jury verdict of $21,000 for the value of the 3 acres with damage to the remainder of $6,500, demonstrates that the jury likely factored in the probability of a zoning change from residential to commercial when it determined fair market value.

A synthesis of these authorities leads us to conclude that if a jury is capable of hearing evidence of reasonably probable zoning *changes* from an opining expert witness, it is also capable of hearing similar evidence, *i.e.*, an expert witness opining on the zoning classification of the property at the time of the taking. Similarly, if a jury is capable of hearing evidence of opinions by expert witnesses on the value of the property, based in part upon the probability of zoning changes, see *Regnier Builders, Inc.*, 189 Kan. 360, it is also capable of hearing evidence of opinions by expert witnesses on the value of the property, based in part upon their conclusions about the existing zoning classification.

The jury would not necessarily be required to determine the actual zoning classification at the time of the taking but could take into consideration the impact of this question—and its certainty, probability, or improbability—in determining what a well-informed buyer is justified in paying and a well-informed seller is justified in accepting for property in an open market. We consider this "competent evidence bearing upon market value." See *Eisenring*, 269 Kan. at 773. Similarly, the experts may consider, as part of their evaluations, the same factors that the parties have argued on appeal to support their points establishing the zoning classification at the time of the taking. Examples include: reliance, estoppel, acquiescence, substantial compliance with K.S.A. 3-307e, collateral attacks, and lack of county airport zoning regulations when the city acted to rezone in 1989.

Reliance upon expert witnesses in eminent domain proceedings is routine. Indeed, as this court stated in *Eisenring*, 269 Kan. at 774:

"Evidence in an eminent domain proceeding consists mostly of the opinions of witnesses who are sufficiently well informed on the subject to be helpful and informative to the jury. Such evidence is allowed because the valuation of real estate is largely a subjective matter and cannot be definitely determined by the application of any exact principle of science. [Citation omitted.]"

On remand, the expert opinions would be based upon the witnesses' education, training and experience, as well as the facts of the case, and would be tested under cross-examination. As this court stated in *Regnier Builders, Inc.,* 189 Kan. at 362:

"The testimony of expert witnesses is weighed by the jury under proper instructions by the court the same as the testimony of other witnesses. The means of testing the competency of expert witnesses in condemnation proceedings is by cross-examination. Only by permitting their cross-examination to the fullest extent can a jury be in a position to determine the probative value of their testimony."

Under the circumstances of this case, the district court erred in determining that the zoning classification of the taken property was R-1. It also erred in designating a controlling question of law pursuant to K.S.A. 2004 Supp. 60-2102(c) for an interlocutory appeal because we will not make the determination of the actual zoning on the date of the taking, which may or may not be important to the jury in its final valuation. *Cf. Regnier Builders, Inc.,* 189 Kan. 362 (jury verdict between the opinions of those experts testifying on property value when zoned residential and the opinion of an expert testifying on property value when reasonable probability of zoning change to commercial).

We reverse and remand to the district court for proceedings consistent with this opinion.

LARSON, S.J., assigned